Commonwealth, Appellant, *v.* Eaglis Corporation, Appellant.

Argued May 27, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*B. B. Bastian,* Deputy Attorney General, with him *James H. Duff,* Attorney General, for appellant at No. 2.

494

*David B. Buerger,* with him *William Booth, Smith, Buchanan & Ingersoll, Ralph E. Evans* and *McNees, Wallace & Nurick,* for appellant at No. 3.

*David B. Buerger,* with him *McNees, Wallace & Nurick* and *Ralph E. Evans,* for appellee at No. 2.

*B. B. Bastian,* Deputy Attorney General, and *James H. Duff,* Attorney General, for appellee at No. 3.

OPINION BY MR. JUSTICE JONES, June 25, 1946:

These appeals by the Commonwealth and the defendant company, a foreign corporation, are from a judgment entered by the Court of Common Pleas of Dauphin County against the defendant on its appeal from a resettlement of its tax liability for the year 1935 under the Pennsylvania Franchise Tax Act of May 16, 1935, P. L. 184, amending the Act of June 1, 1889, P. L. 420, 72 P.S. § 1871.

The defendant, appellant at No. 3, concedes its liability for the franchise tax but complains of the value ascribed to the franchise upon which the tax was calculated. It is the defendant's contention that only its tangible assets in .Pennsylvania in 1935 (real estate) should be included in valuing its capital stock for the purpose of determining the value of the franchise subject to tax. To this, the Commonwealth answers that the total assets of the corporation, tangible and intangible, were essential to the authorized corporate functions which it exercised in Pennsylvania and should, therefore, be included in the incidental valuation of its capital stock.

The Commonwealth in its appeal (No. 2) questions the action of the learned court below in excluding from the multiplicand, in the calculation of the franchise value, stocks of Pennsylvania corporations owned and held by the taxpayer. The court below so acted on the ground that to include the taxpayer's stocks in Pennsyl-

vania corporations, which paid a capital stock tax, would amount to double taxation and that such stocks were therefore to be excluded in figuring the value of the franchise. However, that question was later decided to the contrary by this Court in *Commonwealth v. Monessen Amusement Company, Inc.*, 352 Pa. 120, 42 A. 2d 158, and the taxpayer now agrees, as per stipulation filed, that, if its intangibles are properly includible in valuing the franchise, its stocks in Pennsylvania corporations may not be excluded.

The principal question, therefore, first to be determined is whether the taxpayer's intangibles should have been included in ascertaining the tax-base value of the Pennsylvania franchise. Two other questions, in addition to the question respecting the exclusion of the taxpayer's Pennsylvania stocks from its intangibles, were passed upon by the court below. Both of them had to do with the proper numerator and denominator of the "Gross Receipts" fraction which, averaged with the two other fractions specified by the Act, supplies the coefficient to be applied to the company's capital stock value for ascertainment of the value of the franchise. Both of those questions were decided in favor of the taxpayer and are no longer controverted by the Commonwealth.

The pertinent facts with respect to the defendant company, its organization, management, property and business, were stipulated and show the following situation.

The defendant company was incorporated and organized under the laws of the State of Delaware on May 23, 1932, for the purpose of doing a real estate, investment and holding company business. On June 3, 1932, it registered in Pennsylvania and was qualified to do business as a foreign corporation in this State. On September 27, 1933, it received a certificate of authority to do a real estate, investment and holding company business in Pennsylvania.

The company was a family concern and from the time of its incorporation down to December 31, 1935, its officers were Mrs. Jennie A. McGinley—president, Pierpont L. Stackpole (a Boston attorney and son-in-law of Mrs. McGinley)—vice president, Frank O. Graham—secretary, and Thomas A. McGinley (Mrs. McGinley's son)—treasurer. The directors of the company throughout the same period were Mrs. McGinley, Mr. Stackpole and Mr. McGinley. The assets of the company consisted of the bulk of Mrs. McGinley's property which she transferred to the defendant, upon its organization, in exchange for the whole of its preferred and common stock. She immediately gave the common stock to her four daughters and her son in equal shares. Mrs. McGinley, whose husband had died in 1926 resident in Pennsylvania, resided in Manchester, Massachusetts. Her son and one of her four daughters were residents of Pennsylvania.

From the time of the defendant's organization, it maintained a statutory office in Wilmington, Delaware, but conducted no activities there. Its only other office was in Pittsburgh where it kept its corporate records. Its stationery bore the Pittsburgh address as its office and from that office its Federal and Pennsylvania tax returns were filed. It was qualified to do business in Massachusetts also but did no business there although it kept duplicate records at the office of Mr. Stackpole in Boston. "All securities were physically held in Pittsburgh safe deposit boxes, interest and dividends from thirty-three corporations were physically received in Pittsburgh and dividends physically paid from Pittsburgh. The bonds were physically held and the interest collected by Fidelity Trust Company of Pittsburgh, Agent, which sent monthly statements to the Pittsburgh office. Notices with respect to called and matured bonds were received at the Pittsburgh office." (See Stipulation, Par. 9). The stipulation further set forth that no stockholders' or directors' meetings were ever held in Penn-

sylvania but were always held in Massachusetts or in New York; that the business of holding, managing, investing and reinvesting securities was carried on by the defendant in 1935 but that consideration of investment problems was undertaken only as the result of conferences between Messrs. McGinley and Stackpole which were always held in various places in Massachusetts or New York; and that no portion of the securities owned by the defendant was ever necessary to or used by it in any way in the real estate business. The defendant's real estate holdings in 1935 consisted of three properties in Pittsburgh and one in Massachusetts.

The learned court below justifiably found that ". . . all of the holding company business which [the defendant] did was done in Pennsylvania, and all of the receipts from that holding company business, including the receipts of dividends and interest, were received and kept in Pennsylvania, and all its dividends were paid here." It follows as a matter of law that the defendant's intangibles, which it held in furtherance of its holding company business, were includible in ascertaining the value of the franchise subject to tax: *Commonwealth v. American Gas Company*, 352 Pa. 113, 42 A. 2d 161. In that case the court below, in ruling that the corporation was doing a holding company business in Pennsylvania, specified (see 54 Dauphin 115, 133) as supporting factors that, "In Pennsylvania the Gas Company (1) owned stocks in 24 corporations, including large holdings in two Pennsylvania corporations; (2) it held its directors' meetings; (3) it rented an office for routine necessity; (4) it kept its bank accounts and records; (5) it kept its securities in local bank vaults; (6) it received and distributed the dividends." And, we approved the ruling: see *Commonwealth v. American Gas Company*, supra, at p. 117.

All of the indicia of a holding company business, as specified above in the *American Gas Company* case, are present in the instant case save, alone, for the fact

that the meetings of the directors and stockholders of the defendant company were never held in Pennsylvania. While the fact to opposite effect in the *American Gas Company* case was of some evidentiary value, the place of holding such meetings is by no means determinative of whether or not a foreign corporation is doing business in Pennsylvania. If that circumstance were given the pervading effect for which the appellant contends, no foreign corporation could ever be found to be doing business in this State. Its tax liability for the privilege of doing business in Pennsylvania could be effectively avoided by the simple expedient of having its directors and stockholders meet outside of the State, especially as there is no legal requirement that such meetings be held within the State. In the present instance, the corporate meetings were presumably held in New York or Massachusetts for no better reason than the personal convenience of the directors and stockholders. Certainly, it was not for any disclosed corporate need or service. In *Commonwealth v. The Tonopah and Goldfield Railroad Company,* 17 Dauphin 261, it was held that meetings of the directors and stockholders of that corporation in Pennsylvania were not enough, in the absence of other corporate activities within the State, to constitute doing business here so as to subject the defendant to the Pennsylvania corporate loans tax. The converse is no less true. The holding of meetings of directors and stockholders of a foreign corporation outside of Pennsylvania does not establish that the corporation is not doing business within the State. In the instant case, everything that was done by the directors and stockholders of the defendant company outside of Pennsylvania was given efficient and conclusive business effect only through the defendant's Pittsburgh office.

In an apparent effort to bring the case within our ruling in *Commonwealth v. The Mundy Corporation,* 346 Pa. 482, 30 A. 2d 878, the defendant contends that its business in Pennsylvania was limited to *real estate*

and that the corporate stocks and bonds which it owned and held were neither essential to nor used in *that* business. The distinction between the *Mundy* case and the present is plain. The Mundy Corporation was not authorized to do other than a real estate business in Pennsylvania. Such was the extent of its franchise. Here, the defendant was authorized to do not only a real estate and investment business but also *a holding company business*. And, the intangibles which it owned, held, managed and controlled from its office in Pennsylvania were incident to the exercise of its franchise as a holding company.

As a further argument that it was not doing a holding company business in Pennsylvania in the taxable year, the defendant stresses the relative smallness of its dealings in securities and of the bonds matured in the years 1933, 1934 and *1935* in comparison with its total holdings of stocks and bonds. That fact is wholly immaterial. Trading in securities is not a *sine qua non* to the doing of a holding company business. The ownership, management and control of securities is sufficient where the corporation is authorized so to act. And, that is exactly what the defendant did in this State in 1935, with respect to the property, both tangible and intangible, which it owned and held in the exercise of its franchise.

The defendant's intangibles, as well as its tangibles, were therefore includible in the valuation of its capital stock. That does not make the franchise tax a property tax. It is an excise upon a foreign corporation's privilege of doing business within the State : *Commonwealth v. American Gas Company,* supra, at p. 117; *Commonwealth v. Monessen Amusement Company, Inc.,* supra, at p. 123 ; *Commonwealth v. Quaker Oats Company,* 350 Pa. 253, 260-261, 38 A. 2d 325 (appeal dismissed 324 U.S. 827) ; *Commonwealth v. Ford Motor Company,* 350 Pa. 236, 240, 38 A. 2d 329 (appeal dismissed 324 U.S. 827) ; *Commonwealth v. Columbia Gas and Electric Corpora-*

*tion,* 336 Pa. 209, 221-222, 8 A. 2d 404. The capital stock value is but a factor in the legislatively prescribed formula for determining the value of the privilege.

The defendant's appeal at No. 3 is dismissed. The Commonwealth's appeal at No. 2 is sustained. The judgment is reversed and the cause remanded for the entry of a judgment for the plaintiff upon a calculation made in accordance with this opinion.