Commonwealth *v.* National Biscuit Company, Appellant.

Argued May 27, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD and JONES, JJ.

reargument refused January 2, 1958.

*Roy J. Keefer,* with him *Leslie M. Swope, Charles J. Biddle, Hull, Leiby & Metzger* and *Drinker, Biddle & Reath,* for appellant.

644

*George W. Keitel,* Deputy Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 11, 1957:

This appeal by National Biscuit Company questions the amount of State tax imposed on it for the year 1952 under the Act of May 16, 1935, P. L. 184, which imposes a franchise tax on foreign corporations doing business in Pennsylvania.

Appellant was incorporated in New Jersey, has its principal office in New York City and is duly registered to do business in Pennsylvania where during the tax year in question it engaged in its business of the manufacture and sale of bakery products. Following the filing of its franchise tax report for said year and in conformity therewith, the tax payable by appellant was settled by the fiscal officers of the Commonwealth in the amount of $58,321.60. A petition for resettlement was refused. Appellant paid the tax but filed a petition for review with the Board of Finance and Revenue which was denied and the tax settlement sustained. On appeal, the Dauphin County Court (four judges sitting) upheld the action of the tax authorities and entered judgment nisi in favor of the Commonwealth and against appellant in the said amount of $58,321.60 (to be marked satisfied upon payment of costs). After consideration of exceptions filed, the court entered a final judgment affirming its judgment nisi. This appeal followed.

Appellant's contentions will be better understood by a preliminary reference to the tax legislation involved. Prior to the enactment of the Franchise Tax Act of 1935, both domestic and foreign corporations were subject to the Capital Stock Tax Act of June 1,

1889, P. L. 420, which, as repeatedly held by this Court, imposed a tax on property. Therefore, in the case of foreign corporations there was taxed only so much of the corporation's capital stock as the ratio of tangible assets within the Commonwealth bore to all of the assets of the foreign corporation wherever situated. This worked an unfair discrimination in favor of foreign corporations against domestic corporations (see *Commonwealth v. Columbia Gas and Electric Corporation,* 336 Pa. 209, at p. 215, 8 A. 2d 404), which was remedied by abandonment of the capital stock tax as to foreign corporations and the imposition of a franchise tax in its stead. This was accomplished by amendment to the Capital Stock Tax Act of 1889: (See 72 PS §1871 for the Act of 1889 as amended by the Act of 1935). The amendatory Act of 1935 is entitled "An Act to further amend . . . by substituting a franchise tax on foreign corporations in lieu of the capital stock tax on such corporations". The new tax thus imposed on foreign corporations is, as termed in the title and in the body of the amendatory Act, a "franchise tax", i.e., a tax on the privilege of doing business in the Commonwealth as we have frequently stated. In order to determine the value of the exercise of this privilege conferred by the Commonwealth, the Franchise Tax Act provides a formula for the ascertainment of the corporation's activities within the State. The business transacted in the State is measured through allocation fractions involving the proportion which the tangible property in the State, the payroll in the State and the gross receipts in the State respectively bear to the total assets, payroll and gross receipts of the corporation. It is unnecessary to set forth in detail the factors composing the formula. They were discussed at length in the *Columbia Gas* case, 336 Pa., supra (see p. 214 et seq.) and in *Commonwealth v. Ford Motor Company,* 350 Pa. 236, (see

p. 240 et seq.), 38 A. 2d 329 and the formula approved as a reasonable measure of value.

In accordance with the formula and as required thereunder for the determination and application of the allocation fractions necessary for the computation of the tax, the taxing departments in appraising appellant's entire capital stock included all of the defendant's tangible and intangible assets as listed in the balance sheet contained in its Franchise Tax Report for 1952, excepting its investment in shares of stock of subsidiary companies operating in foreign countries which, together with the income derived therefrom, was excluded; this exclusion is not in issue. Claiming that the tax in question is a property tax and therefore extraterritorial assets of the corporation may not be included in arriving at the taxable valuation, appellant asserts that the formula or method applicable under the Capital Stock Tax Act should be applied to it. By stipulation it was agreed that under the formula prescribed by the Franchise Tax Act the taxable valuation is $11,664,320, and the resulting tax $58,321.60 as settled; that if, as claimed by appellant, the method or formula used in settling capital stock tax against appellant prior to the enactment of the Franchise Tax Act were applied, the taxable valuation would be $5,734,202 and the tax thereon $28,671.01 which, since the tax as settled in the amount of $58,321.60 was paid, would entitle appellant to a credit of $29,650.59.

Appellant contends that the tax as computed and imposed on it offends various provisions of the State and Federal Constitutions. The contention rests upon the premise or assumption that the Franchise Tax Act of 1935 imposed a property tax. In cases decided by this Court following the passage of the Act of 1935 we unequivocally and repeatedly held that the franchise tax imposed by it is not a property tax but, as its name

implies, a tax levied for the privilege of doing business in the Commonwealth, and its constitutionality was upheld: *Commonwealth v. Columbia Gas and Electric Corporation,* supra (1939) ; *Commonwealth v. Ford Motor Company,* supra (1944) ; *Commonwealth v. Quaker Oats Company,* 350 Pa. 253 (1944), 38 A. 2d 325; *Commonwealth v. Monessen Amusement Company, Inc.,* 352 Pa. 120 (1945), 42 A. 2d 158. The constitutional attacks upon the Act rested then, as they do now, upon the contention that the tax imposed by it is a property tax.

In *Commonwealth v. Columbia Gas and Electric Corporation,* supra, in which the constitutionality of the Franchise Tax Act was upheld in the first judicial interpretation of the tax, this Court said at p. 217 et seq.: "Did the legislature intend to change its old policy of levying a property tax and create in its stead a franchise tax upon foreign corporations? *We concur with the court below in its conclusion that the tax is a franchise tax and not a property tax.* The legislature in the title to the act called it a franchise tax. While not conclusive, some weight should be given to this designation in determining the nature of the tax. . . . Whether this is a property tax or a franchise tax rests to some extent upon the method of its ascertainment and the incidence of the tax itself. Where a tax is imposed directly on specific property, it is a property tax. *The incidence of a franchise or privilege tax is upon a franchise or privilege* and not upon property or capital. . . .

"Among the standards used for distinguishing a franchise tax from a property tax has been the method adopted for laying them and fixing the amount. . . . The determination of the value of the franchise under the amendatory Act may bring into consideration property situated within the Commonwealth, and give to it

a functional value as part of an organic unit. *But the incidence of the tax is fixed upon the value of the franchise; not upon the property itself.* To ascertain that taxable value there must, of course, be a method.

"Under the 1935 Act, the underlying element in the ascertainment of the value of the franchise is the value of the entire capital stock of each foreign corporation. We referred to this in Arrott's Estate, 322 Pa. 367, as being the base. The attempt to determine what part of the value of this base should be the taxable value called for by the Act is to ascertain with approximate correctness the equivalence of that value which the legislature deemed the franchise or right to do business in this State to have." (Emphasis supplied).

In *Commonwealth v. Ford Motor Company*, supra (appeal dismissed 324 U. S. 827), at p. 240 et seq. we said: ". . . This Act imposes a *franchise* or *excise* tax upon foreign corporations as distinguished from a property or ad valorem tax. Prior to 1935, foreign corporations doing business here were required to pay a capital stock tax, which, as a property tax, proved unsatisfactory and produced unfair results. As we stated in Arrott's Estate, 322 Pa. 367, 372, 185 A. 697, the Act of 1935, by changing the incidence of the foreign corporation tax, endeavored to achieve a more equitable measurement of taxation for this class of corporation. It accomplished this by imposing a franchise tax not *upon* capital stock but *measured* by capital stock. The tax base was determined, not by the allocation to Pennsylvania of an arbitrary percentage of the total capital stock of the corporation, but, through the use of a tripartite formula, by ascertaining, insofar as possible, the relation of the corporate activities in this State to the activities of the corporation everywhere. In the Columbia Gas and Electric Corp. case, supra, at page 216, we said: 'The tax base represents the value of

[the] right to do business in this State.' . . . (Emphasis the Court's).

"In the Columbia Gas and Electric Corp. case, supra, we held that the tax, *not being a property tax, but a tax upon the privilege of engaging in business in this Commonwealth,* should be measured by a valuation reflecting capital so used as to affect the value of the Pennsylvania franchise, rather than a valuation reflecting merely aggregate capitalization. . . ." (Emphasis supplied).

In *Commonwealth v. Quaker Oats Company,* supra (appeal dismissed 324 U. S. 827), we said at p. 260: ". . . the tax is imposed upon the privilege of doing business here, measured by capital stock. . . ."

In *Commonwealth v. Monessen Amusement Company, Inc.,* supra, the court below had held that the value of shares in a domestic corporation owned by a foreign corporation must be deducted in fixing the valuation of the foreign corporation for franchise tax purposes. In reversing the court below, this Court said at p. 122: ". . . Appellee's contention in the present case and the decision of the court below are both rested on the false assumption that the franchise tax, in some way, is a tax upon the *property* of the corporation which is used as a measure for the tax. . . .

"As we stated in Commonwealth v. Ford Motor Company, supra, the franchise tax is not a tax upon the property of the corporation, but upon the doing of business in this Commonwealth. . . ." (Emphasis the Court's).

In *Commonwealth v. American Gas Company,* 352 Pa. 113, 117 (1945), 42 A. 2d 161, we said: ". . . The former capital stock tax upon foreign corporations was a *property* tax which could only be imposed upon corporations having property subject to the jurisdiction of the taxing authorities. The franchise tax, however, is

a tax on the privilege of doing business and is an *excise* tax, as we have pointed out in numerous cases. . . ." (Emphasis the Court's).

In *Commonwealth v. Eaglis Corporation,* 354 Pa. 493 (1946), 47 A. 2d 661, we stated, p. 499, that the inclusion of intangibles as well as tangibles in the valuation of capital stock ". . . does not make the franchise tax a property tax. It is an excise upon a foreign corporation's privilege of doing business within the State: . . . The capital stock value is but a factor in the legislatively prescribed formula for determining the value of the privilege."

In referring to the *Columbia Gas and Electric Corporation, Ford Motor Company, Quaker Oats Company* and *Monessen Amusement Company* cases, appellant expressly concedes that these cases held that the franchise tax is an excise tax upon foreign corporations for the privilege of doing business in Pennsylvania. In its brief it states: "In these cases, the question, inter alia, of whether or not the franchise tax was an excise or a property tax was at issue and in each case the Court held that the franchise tax was an excise tax and that property such as United States securities and other intangible, as well as tangible, property located outside of the State could be constitutionally included in the tax base for the reason that there was no direct tax thereon."

In an effort to overcome the decisive effect of our rulings in the above cited cases, appellant points to language employed in some later cases which referred to the franchise tax as a property tax. These cases, *Federal Drug Company v. Pittsburgh et al.,* 358 Pa. 454 (1948), 57 A. 2d 849; *Murray et ux. v. Philadelphia et al.,* 364 Pa. 157 (1950), 71 A. 2d 280, and *National Biscuit Co. v. Philadelphia,* 374 Pa. 604 (1953), 98 A. 2d 182, were concerned with the validity of certain city

ordinances. They arose under enabling statutes which permitted local municipal subdivisions to enter the tax field not occupied by the State, and the issue was whether the imposition of the local tax exceeded the power granted the municipality by duplicating an existing tax levied by the State. The question presented in all of them was whether the local tax resulted in double taxation which was legislatively prohibited under the enabling Act. The local ordinance was under attack and not the State Franchise Tax Act. In *every* case arising between the Commonwealth and its taxpayers where the imposition of the franchise tax has been challenged, in upholding its validity we have invariably declared it to be an excise tax upon the privilege of doing business in the Commonwealth. We do not intend to depart from this settled ruling which is in complete accord with rulings of the United States Supreme Court, a number of which are hereinafter referred to.

After considering five of the cases which we have above reviewed unequivocally holding the tax in question to be an excise tax, and the three cases relied on by appellant as holding the contrary, President Judge RICHARDS, specially presiding, speaking for the unanimous court below, pertinently said: "The latter three cases mentioned above did not expressly overrule the first five referred to. The latter three were not contests between the State and its taxpayers. Interpretation and application of the franchise tax act were not directly involved. We know of no case in which the Supreme Court has deviated from its declaration that the franchise tax is a tax on foreign corporations for the privilege of doing business in Pennsylvania. . . . No matter what terminology has been employed as to the nature of the tax, or what adjectives have been used to describe it, the reported cases between the Common-

wealth and its taxpayers, in which the statute is applied, have consistently held as we have indicated. It is our conclusion, therefore, that the tax settlement in the present case was correct."

In determining whether a tax duplicates another tax and results in double taxation prohibited to local taxing authorities, the operation or incidence of the two taxes is controlling as against mere differences in terminology from time to time employed in describing taxes in various cases. The incidence of a tax embraces the subject matter thereof and, more important, the measure of the tax, i.e., the base or yardstick by which the tax is applied. If these elements inherent in every tax are kept in mind, the incidence of the two taxes may or may not be duplicative. Thus analyzed and viewed in determining whether double taxation has occurred, the *decisions* upon which appellant relies are readily reconcilable with the cases holding the corporate franchise tax to be an excise tax. The subject matter of the latter is the privilege of doing business in Pennsylvania and the measure is the value of the capital stock related to the exercise of the State franchise conferred on it. In *Federal Drug Company v. Pittsburgh*, 358 Pa. 454, supra, relied on by appellant, not only the measure but the subject matter of the mercantile license tax imposed by the challenged Pittsburgh ordinances differed from the State franchise tax. The distinctions were plainly set forth in the opinion of the Court. In disposing of the contention that the city tax duplicated the State franchise Act in violation of the prohibition of the so-called Tax Anything Act,[1] we said at p. 457:

---

[1] Act of June 25, 1947, P. L. 1145, as amended, 53 PS §2015.1, which broadened the taxing powers of various political subdivisions (other than cities of the first class) and school districts, with the limitation, however, that they should not have authority to impose

"The answer to this contention is twofold. The Act of 1935, supra, is a tax for the privilege of a foreign corporation coming into the state of Pennsylvania for the purpose of conducting its business *in corporate form*. The city ordinance, under attack, is a tax for the privilege of doing business within the city with respect to *any* individual, partnership or corporation. It is not a tax limited to foreign corporate associations. In the second place, while in each case the *object* of the tax is to license for the purpose of doing business, the tax actually *imposed* by the Foreign Corporate Franchise Tax is measured by the value of *the property of the foreign corporation within the state*. In the Pittsburgh ordinances the tax is on the *gross volume* of business conducted by the taxpayer. The respective impacts of the two taxes are on a totally different basis." (Emphasis the Court's).

In *National Biscuit Co. v. Philadelphia*, 374 Pa. 604, supra, relied upon by appellant, the City of Philadelphia had similarly imposed a mercantile license tax on the "gross volume of business" transacted by persons engaged in manufacturing, professions, occupations, trades, vocations and commercial activities in the City. As in the *Federal Drug Company* case, the Philadelphia mercantile tax differed widely both as to subject matter and measure from the State franchise tax, and accordingly was not duplicative of the latter. The reasoning and principles established in upholding the Pittsburgh mercantile tax in the *Federal Drug Company* case were equally applicable and decisive of the validity of the Philadelphia mercantile tax. It was therefore unnecessary in the *National Biscuit Co.* case

a tax on a privilege, transaction, subject, occupation, or personal property which is or becomes subject to a State tax or license fee, nor on the privilege of employing such tangible property as is or becomes subject to a State tax or license fee.

to refer to the State franchise tax as a property tax or to treat it as such. In so doing language in the opinion in *Murray v. Philadelphia,* supra, was referred to, but what was said in the *Murray* case in this regard was likewise unnecessary to the decision there reached.

In the *Murray* case, decided in 1950, the Philadelphia ordinance imposing a net income tax was attacked. It was held invalid as violative of the Sterling Act.[2] The Philadelphia tax was measured by *net income* and the State corporate net income tax is measured by *net income.* There was a clear duplication in the impact of the two taxes, resulting in the prohibited double taxation. This compelled the Court to hold as it did that the Philadelphia tax conflicted with the corporate net income tax and this was all that was required for the disposition of the case. However, the opinion, quite unnecessarily, went on to say that the Philadelphia tax also collided with the State franchise tax because both could be considered property taxes. This assertion rested upon a likening of the franchise tax to the capital stock tax. It was stated at p. 170: ". . . The franchise tax is imposed by the same Act of Assembly that imposes the capital stock tax and was obviously devised to reach the property of foreign corporations as the equivalent of the capital stock tax: Arrott's Estate, 322 Pa. 367, 371, 185 A. 697 (1936) ; Commonwealth v. Union Trust Co. of Pittsburgh, 345 Pa. 298, 307, 27 A. 2d 15 (1942) . . ." As stated in the opinion, the franchise tax has been considered ". . . an excise tax in

---

[2] Act of August 5, 1932, P. L. 45, 53 PS §4611 which had previously broadened the tax powers of the City of Philadelphia in a manner similar to the Tax Anything Act of 1947 (see Footnote 1, supra), with like limitations, prohibiting the imposition of ". . . any tax on a privilege transaction, subject or occupation or on personal property which is now or may hereafter become subject to a State tax or license fee."

some contexts, in others . . . a tax on property." In the *Murray* case the Court was considering the concept of the tax in passing on the validity of the City tax. In the instant case the concept of the tax is being considered in a direct attack upon the State franchise tax, and as before stated in this opinion, we have repeatedly and invariably ruled in cases between the Commonwealth and its taxpayers that the franchise tax is an excise tax and not a property tax. Moreover the Commonwealth was not a party to the *Murray* case and it should not be construed as adjudicating the rights of the Commonwealth.

*Arrott's Estate* and the *Union Trust Company* case were cited in support of the above quoted statement in *Murray*. No reference was made to later cases where the franchise tax was directly attacked and it was ruled that the franchise tax is *not* the equivalent of the capital stock tax. *Arrott's Estate*, decided in 1936, had ruled that, for the purpose of the exemption from personal property taxation of shares of stock on which capital stock tax had been paid, the franchise tax was the equivalent of the capital stock tax. The *Union Trust Company* case, decided in 1942, merely extended the rule in *Arrott's Estate* by extending the exemption *for* personal property taxation to shares of stock on which a tax on bank shares had been paid. In *Commonwealth v. Monessen Amusement Company, Inc.*, 352 Pa. 120, supra, decided in 1945, nine years after the decision in *Arrott's Estate*, and where we were directly construing the rights of a State taxpayer under the Franchise Tax Act, we denied to a foreign corporation an exemption for the ownership of stock of a domestic corporation claimed on the basis of double taxation, holding that there could be no double taxation, because the capital stock tax was a property tax, while the franchise tax was an excise tax for the privilege of do-

ing business in Pennsylvania. We rejected the taxpayer's reliance upon the decision in *Arrott's Estate* and refused to find that the capital stock tax and the franchise tax were equivalent.

Conversely, in *Commonwealth v. Shenango Furnace Company*, 362 Pa. 491, 493, 67 A. 2d 113, decided in 1949, we denied to a domestic corporation an exemption from capital stock tax for the ownership of stock of a foreign corporation which was subject to the payment of franchise tax, saying: "As in the Monessen case, supra, the appellant bottoms its argument on the decision in Arrott's Estate, 322 Pa. 367, 185 A. 697, where a certain equivalence between the capital stock tax on domestic corporations and the franchise tax on foreign corporations was recognized. What the appellant overlooks, however, is that the equivalence, so noted, was of importance in Arrott's Estate to the construction of the express exemption provisions of the four mill county tax Act of June 17, 1913, P. L. 507, and the State Personal Property Tax Act of June 22, 1935, P. L. 414, there involved. No such question arises here under either of the statutes with which this case is concerned, viz., the capital stock tax Act of June 1, 1889, P. L. 420, and the franchise tax Act of May 16, 1935, P. L. 184. The questions of express exemption and of alleged double taxation are without presently material bearing upon one another, as the Monessen case distinguishment of Arrott's Estate clearly reveals."

The *Monessen* and *Shenango* cases clearly demonstrate the line of cleavage between the decisions of this Court dealing directly with State corporation taxes, and those involving local taxes, and nullify the effect of the statement in *Murray* regarding the equivalence of the franchise tax and the capital stock tax, or at least limit the scope of the language there employed

to cases where a conflict between a challenged local tax and a State tax was in question.

It should be readily apparent that the considerations before a court when confronted by an attack upon a local tax as violative of the Sterling Act or of the so-called "Tax Anything Act", and the considerations when an attack is made as here, upon the constitutionality and validity of a State tax, are wholly different. And equally apparent it must be that the words as used in either case have judicial meaning only within the context of the problem to which they are applied. When carefully analyzed, and the incidence of the taxes considered, the decisions in the cases relied on by appellant are not only consistent inter se, but are not at variance with the cases in which we have ruled the franchise tax to be an excise tax and not a property tax.

Appellant makes the additional contention that, whatever our ruling may be on the main issue presented, at least the United States securities owned by appellant should not be included in the tax computation because of the general immunity which such securities enjoy from State and local taxation.[3] This contention is not new; it was raised and rejected in the *Ford* and *Quaker Oats* cases, supra. In the *Ford* case, 350 Pa. 236, supra, Mr. Justice ALLEN STEARNE in dismissing the contention that there was discrimination in our tax laws against foreign corporations in favor of domestic corporations because of certain exemptions enjoyed by the latter in the computation of the capital stock tax, said at p. 250: "... In this contention there is apparent again appellant's studied confusion of the essential dif-

---

[3] According to appellant's calculation, the elimination of its United States securities in the computation of the tax would reduce the tax payable by it to $50,080.27, entitling appellant to a credit of $8,241.33.

ference between a property tax and a franchise tax. Certain property of domestic corporations, *including United States obligations* and tangible property having an extraterritorial location is excluded from the valuation of their capital stock for purposes of the direct tax. Obviously, this property could not constitutionally be included. Similar property, if owned by a foreign corporation and so employed by it as to affect the value of the franchise in Pennsylvania, is, on the other hand, included in the measurement of the base of the franchise tax. . . ." (Emphasis supplied).

The United States Supreme Court has consistently ruled that a State may constitutionally levy an excise tax on corporations for the privilege of doing business, and measure the tax by the property or net income of the corporation, including tax exempt United States securities or the income derived therefrom: *Provident Institution v. Massachusetts,* 6 U. S. (6 Wall.) 611 (1868); *Society for Savings v. Coite,* 6 U. S. (6 Wall.) 594 (1868); *Hamilton Company v. Massachusetts,* 6 U. S. (6 Wall.) 632 (1868); *Home Insurance Company v. New York State,* 134 U. S. 594 (1890); *Tradesmens National Bank of Oklahoma City v. Oklahoma Tax Commission,* 309 U. S. 560 (1940); *Educational Films Corporation of America v. Ward, Attorney General of New York et al.,* 282 U. S. 379 (1931); *Werner Machine Co., Inc. v. Director of Division of Taxation, Department of the Treasury, of New Jersey,* 350 U. S. 492 (1956).

Appellant contends that the United States Supreme Court held otherwise in *New Jersey Realty Title Insurance Co. v. Division of Tax Appeals of New Jersey et al.,* 338 U. S. 665. This is clearly a misinterpretation of the ruling. In that case a local tax assessment was held to be invalid because it was a tax *on* United States securities. The United States Supreme Court distin-

guished the case from its decisions in *Tradesmens National Bank of Oklahoma City v. Oklahoma Tax Commission*, supra, and *Educational Films Corporation of America v. Ward*, supra, saying that the tax concerned in the latter two cases ". . . was not measured in effect by the amount of the taxpayer's federal securities or interest but *was a franchise tax measured by net income*. The section here in question was not considered as imposing a tax on privilege or franchise by either the New Jersey Legislature or the taxing officials or by any of the courts below. While we are not limited by the state's characterization of its tax, cf. Wisconsin v. J. C. Penney Co., 311 U. S. 435, 443 (1940), we likewise do not think the assessment can be sustained as one levied on a corporate franchise. . . ." (Emphasis supplied).

In the *Werner Machine Co.* case, 350 U. S. 492, supra, the Supreme Court held that the tax imposed by the State of New Jersey measured by the corporation's "net worth" was a tax on the corporate franchise which did not discriminate against Federal obligations and was valid despite the inclusion of Federal bonds in the determination of net worth. The appellant in that case made the same argument as appellant is making in the case before us. In sustaining the New Jersey tax the Court said at p. 494: ". . . And since this is a tax on the corporate franchise, it is valid despite the inclusion of federal bonds in the determination of net worth. This Court has consistently upheld franchise taxes measured by a yardstick which includes tax-exempt income or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property. [Citing cases]. . . . New Jersey Realty Title Ins. Co. v. Division of Tax Appeals, 338 U. S. 665, on which appellant relies, is distinguishable, in that it did not involve a franchise tax, but rath-

er a tax whose legal incidence this Court found to be upon the intangible assets of the corporation."

Equally untenable is appellant's argument that in some way it has been deprived of due process. In *Standard Oil Company of Indiana v. State of Missouri on the Information of Hadley, Attorney General, Succeeded by Major*, 224 U. S. 270, 287, the Court said: "The 14th Amendment guarantees that the defendant shall be given that character of notice and opportunity to be heard which is essential to due process of law. When that has been done, the requirements of the Constitution are met, and it is not for this court to determine whether there has been an erroneous construction of statute or common law. . . ." The Commonwealth's Constitution requires no more.

Appellant claims that if the franchise tax settlement against it is upheld, such decision will be so contrary to the decision in *National Biscuit Co. v. Philadelphia*, supra, involving the same taxpayer, that it will amount to arbitrary judicial action and thus constitute a denial of due process. It is sufficient answer that, as we have pointed out, the decision in *National Biscuit Co. v. Philadelphia* is not inconsistent but, on the principles stated in the *Federal Drug Company* case, entirely reconcilable with our rulings in cases challenging the franchise tax. Even if appellant's untenable assumption were adopted that the two decisions are irreconcilable and that *National Biscuit Co. v. Philadelphia* must be considered a holding that the franchise tax is a property tax, that would not prevent this Court from presently ruling otherwise. As stated in *Patterson v. Colorado ex rel. The Attorney General of the State of Colorado*, 205 U. S. 454, 461: ". . . There is no constitutional right to have all general propositions of law once adopted remain unchanged. . . . in general, the decision of a court upon a question of law, however

wrong and however contrary to previous decisions, *is not an infraction of the 14th Amendment merely because it is wrong or because earlier decisions are reversed."* (Emphasis supplied).

As first stated, however, we consider all of our decisions in cases involving statutory prohibition of double taxation entirely reconcilable with our many decisions declaring the franchise tax constitutionally unassailable. And we are satisfied that it was properly applied by the taxing authorities in the present case. The franchise tax has been so applied since its inception more than twenty years ago as an excise tax for the privilege of doing business in Pennsylvania in accord with our many decisions upholding the formula under which the tax due is ascertained and no sufficient reason has been advanced for changing our firm rulings.

Judgment affirmed.

CONCURRING OPINION BY MR. JUSTICE BELL:

I write this opinion with great reluctance, but fairness to the appellant compels me to do so. I am in complete disagreement with some parts of the majority opinion, its attempted distinctions of prior decisions of this Court, and its failure to overrule the latest decision of this Court, viz., *National Biscuit Company v. Philadelphia*, 374 Pa. 604, 98 A. 2d 182 (1953). In that case, where the basic issue was, as in the present case, whether the (State) Foreign Corporation Franchise Tax Act of May 16, 1935, P. L. 184, 72 PS 1871, imposed a franchise tax or a property tax, this Court held that said Act imposed *a property tax;* and therefore the so-called Philadelphia Mercantile License Tax, since it was an excise or franchise tax, was not a duplication of the State Foreign Corporation Franchise

662

Tax Act and for this reason, it was not legislatively prohibited under the Sterling Act. The Court* relying upon the most recent decisions of this Court, viz., *Federal Drug Company v. Pittsburgh et al.*, 358 Pa. 454, 57 A. 2d 849 (1948), and *Murray v. Philadelphia et al.*, 364 Pa. 157, 71 A. 2d 280 (1950), held, we repeat, that the aforesaid Foreign Corporation Franchise Tax Act of May 16, 1935, *imposed a property tax and not a franchise tax,* and said (page 612):

". . . as to the payments made to the Commonwealth of capital stock taxes, corporate net income taxes, *foreign corporation franchise taxes,*\* and taxes on net earnings or income, it need merely be pointed out that *all those taxes have been held, many times, to be property taxes.* In an opinion by Mr. Justice LINN, who cited many previous authorities so holding, the capital stock tax was again declared in Murray v. Philadelphia, 364 Pa. 157, 166, 71 A. 2d 280, 284, to be a tax on the property of the corporation, and so likewise (following Blauner's Inc. v. Philadelphia, 330 Pa. 342, 198 A. 889, and Philadelphia v. Samuels, 338 Pa. 321, 12 A. 2d 79) the corporate net income tax (p. 169, A. p. 286), *the franchise tax* (p. 170 A. p. 286), and (following Kelley v. Kalodner, 320 Pa. 180, 187, 181 A. 598, 601) a tax on net earnings or income (p. 175, A. p. 289). On the other hand, the authorities are equally numerous to the effect that a mercantile license tax is not a tax on property or income, but an excise [or franchise]\*\* tax upon the privilege of transacting business measured by the gross volume of business annually transacted: Knisely v. Cotterel, 196 Pa. 614, 46 A. 861; Commonwealth v. Harrisburg Light & Power Co., 284 Pa. 175, 130 A.

---

\* With Justices ALLEN M. STEARNE, BELL and MUSMANNO dissenting.

\*\* Italics and brackets throughout, ours.

412; Commonwealth v. Globe Furnishing Co., 324 Pa. 180, 188 A. 170; Commonwealth v. McKinley-Gregg Automobile Co., 345 Pa. 544, 28 A. 2d 919; Commonwealth v. Bailey, Banks & Biddle Co., 20 Pa. Superior Ct. 210; H. J. Heinz Co. v. School District of Pittsburgh, 170 Pa. Superior Ct. 441, 87 A. 2d 85. *Since clearly, therefore, a mercantile license tax is not a duplication of any of the property taxes* paid by appellees to the Commonwealth, the City of Philadelphia is not prohibited by reason of any limitation on its power contained in the Sterling Act from imposing such a tax on corporations otherwise subject thereto."

The present majority opinion says: "Appellant contends that the tax as computed and imposed on it offends various provisions of the State and Federal Constitutions. The contention rests upon the premise or assumption that **the Franchise Tax Act of 1935 imposed a property tax.** In cases decided by this Court following the passage of the Act of 1935 we *unequivocally and repeatedly held that the franchise tax imposed by it is not a property tax* but, as its name implies, a tax levied for the privilege of doing business in the Commonwealth, and its constitutionality was upheld: Commonwealth v. Columbia Gas and Electric Corporation, supra (1939); Commonwealth v. Ford Motor Company, supra (1944); Commonwealth v. Quaker Oats Company, 350 Pa. 253 (1944), 38 A. 2d 325; Commonwealth v. Monessen Amusement Company, Inc., 352 Pa. 120 (1945), 42 A. 2d 158." This statement flies in the teeth of the more recent opinions and decisions of this Court which as above demonstrated held expressly, squarely and specifically to the contrary.

The present majority opinion attempts to distinguish the earlier cases from the recent cases which hold clearly, directly and exactly to the contrary, on

664

the ground that the recent cases dealt with a local ordinance. Of course this attempted distinction not only disregards the recent decisions and the clear and forceful language of the Court's opinions, but it also completely overlooks the fact that the local ordinance (of the City of Philadelphia) whose validity was challenged was absolutely invalid and void under the Sterling Act, if it levied or collected "any tax on a *privilege,* transaction, *subject,* or occupation or on personal property which is now or may hereafter become subject to [1] a state tax or [2] a license fee." The most important and basic issue in *National Biscuit Company v. Philadelphia,* 374 Pa., supra, as well as in the recent cases hereinabove cited, was whether the State taxes—including the State Franchise Tax Act of May 16, 1935—were franchise taxes or property taxes. In that case the majority, we repeat, held that the taxes imposed by the State Franchise Tax Act of 1935 (and other State Tax Acts enumerated therein) were *property taxes* and consequently sustained the validity of the Philadelphia so-called Mercantile License Tax as a franchise or excise tax, i.e., a tax for the privilege of doing business in Philadelphia. This was the basic and only legal ground upon which (a majority of) the Court sustained the ordinance.

How this Court can one moment say that a tax imposed by a certain State Act is a property tax, and the next moment say that it is a franchise tax, or vice versa, is to me incomprehensible;* how this Court can

---

* See footnote to my dissenting opinion in *National Biscuit Company v. Philadelphia,* 374 Pa., supra (page 637) : "The distinction or line of demarcation between a privilege tax, an excise tax and a property tax, which in the last analysis must be determined by the incidents and the nature and legal effect of the Act rather than by the name by which it is described, is so nebulous, flexible and fluctuating, that the decisions on this point throughout the

then say that all the flatly contradictory and irreconcilable decisions of this Court on this point are harmonious and reconcilable, is to me incomprehensible; and finally, how this Court can reach its present conclusion (that the State franchise tax is a franchise tax, with which I agree) without overruling *National Biscuit Company v. Philadelphia,* 374 Pa., supra, and the recent cases which say exactly the opposite, is likewise incomprehensible.

I would hold that the franchise tax which is imposed by the State by the Act of May 16, 1935, supra, on foreign corporations doing business in Pennsylvania, is a franchise tax; and I would overrule all prior decisions of this Court which hold that it imposes a property tax; and I would particularly overrule *National Biscuit Company v. Philadelphia,* 374 Pa., supra.

Mr. Justice MUSMANNO and Mr. Justice BENJAMIN R. JONES join in this concurring opinion.

---

entire country are ofttimes vacillating, confused and contradictory. See: 53 C.J.S., Licenses, pp. 457-461."