## Commonwealth v. Minnesota Mining & Manufacturing Co.

*Edward Friedman,* Deputy Attorney General, *George W. Keitel,* Deputy Attorney General, and *Anne X. Alpern,* Attorney General, for plaintiff.

*N. Clyde Shaeffer* and *William J. Begley,* for defendant.

RICHARDS, P. J. (specially presiding), January 13, 1959.—This case involves the corporate net income tax of defendant for the calendar year 1947. In its initial report the company estimated its own tax liability at $19,021.80. As finally determined by the State, after some intermediate actions, it was concluded that the proper amount was $18,987.80. According to the record, the tax has been paid in full and defendant has to its credit a balance of $75.66.

When the case came on for hearing, the usual exhibits were offered, including a stipulation of facts. This stipulation measures about three inches thick,

including the exhibits, and is much too voluminous for us to repeat in full. However, since there is no dispute about the matter, we adopt as the findings of fact by the court the facts set forth in the stipulation, and incorporate them herein by way of reference. We shall hereafter outline briefly such of these facts as we deem necessary for the disposition of this case. We may add that the parties filed a stipulation to try the case without a jury, pursuant to the Act of April 22, 1874, P. L. 109, 12 PS §688 et seq.

Defendant is a corporation of the State of Delaware. It has a statutory office there, but maintains its principal place of business in St. Paul, Minn. Its articles of incorporation are extremely broad. However, generally speaking, we will state that it is authorized to engage in the manufacture and sale of various products, including, inter alia, abrasives and adhesives. It is likewise authorized to manufacture, purchase and sell machinery and related items. Its charter is broad enough to cover mining and quarrying, timbering, the maintenance of stores and warehouses. One interesting feature of the charter powers is the fact that it is authorized to "sell, lease, assign, pledge, grant or take licenses in respect of, or in any manner dispose of and in any manner to deal and contract with reference to inventions, improvements, letters patent, patents, patent rights, licenses and privilege, secret processes, scientific discoveries, patented processes," etc.

During the year in question, defendant was authorized to do business in Pennsylvania. Its certificate of authority authorizes it to "manufacture and sell abrasives and adhesive, and water proof products, paints, colors, chemicals, cloth, machinery, tools; and to mine, quarry and operate mining property; and to engage in industrial chemical and research work."

During the year 1947, defendant had a warehouse in Philadelphia and maintained offices in Philadelphia

and in Pittsburgh. The salesmen from these Pennsylvania offices solicited business in Pennsylvania and adjoining territory. The orders received by the Pennsylvania offices were accepted and processed either at the Philadelphia warehouse or elsewhere. All billing was from the St. Paul office. Substantially all of the products so sold were manufactured and sold under United States patents, either owned or licensed to defendant. Defendant also maintained a bank account in the City of Philadelphia known as the "working fund." During this year defendant owned 100 percent of the stock of a number of corporations and 28½ percent of the stock of Durex Abrasive Corporation. It also owned five foreign corporations engaged in business in foreign countries. The Durex Corporation owned all of the stock of Abrasifs Durex, S. A., a French company which was engaged in the manufacture and sale of abrasives.

Defendant owned 216 United States patents and 271 foreign patents. Some of these patents cover the same subject matter and were, therefore, overlapping. In other instances this was not true. Generally, the products manufactured and sold abroad were the same as those manufactured and sold in the United States. Durex had a nonexclusive license from defendant to manufacture and sell abroad certain covered items. Also, a number of foreign corporations were making and selling products under defendant's foreign patents, under sublicenses from Durex. All of the products manufactured by defendant under its patents and licenses were sold by salesmen operating out of Philadelphia and Pittsburgh. During the year in question, defendant received $310,733 from Durex as royalties.

Defendant apparently maintains no separate accounting system or any segregation of its business so far as the stipulation discloses.

During the year in question, the total net royalties and technical fees of defendant were $705,795. The total net foreign royalties were $282,650. The taxing officials finally determined that the total net income for said year was $16,348,271. Should we exclude all of the royalties and technical fees, the tax would amount to $18,266. Should we exclude the foreign royalties and technical fees only, the tax would amount to $18,700.

The specification of objections charges that the settlement is unconstitutional in that it violates section 8, art. I; section 10, art. I; section 1, art. IV; and the fourteenth amendment to the Constitution of the United States. It likewise contends that the settlement is unconstitutional under sections 1, 9 and 10 of art. I, and section 1 of art. IX of the Pennsylvania Constitution.

Furthermore, it is alleged that defendant, during the year in question, was not authorized to issue licenses to use patents owned by it, issued by either the government of the United States or foreign governments; nor to furnish information relating thereto to foreign countries; nor to collect royalties for the use of foreign or United States patents; nor to collect technical fees. Generally speaking, it contends that it is error to include income from royalties and technical fees in the tax base, for the reason that it is engaged in a multiform business and not a unitary business.

The Commonwealth, of course, contends precisely to the contrary.

### Discussion

It has been generally held that in order to establish a multiform business it must appear that there were separate and distinct activities and that those having no reference to the privilege granted to do business in Pennsylvania should be excluded from the tax base.

However, if the out-of-State activities are part of the organic whole, and have an important functional part in the business conducted here, proceeds therefrom may be included.

At the outset, it must be borne in mind that the tax here in question is not a property tax but a tax on the privilege of doing business in Pennsylvania, measured by the statutory formula. In effect, defendant claims that this formula assigns income to Pennsylvania which should be excluded by reason of multiformity; hence, brings about an unconstitutionality in the application thereof.

It has long since been held that viewing the act as a whole it cannot be declared to violate either the Federal or State Constitutions, or to be so inherently arbitrary as to render it unconstitutional: Commonwealth v. Columbia Gas and Electric Corporation, 336 Pa. 209, 223.

Quite recently Judge Neely of this court, in Commonwealth v. The L. D. Caulk Co., 69 Dauph. 289, particularly at page 292, had occasion to consider the question of uniformity and multiformity, and he aptly said:

"A corporation may be said to be carrying on a unitary enterprise where the component parts of its business are too connected and necessary to each other to justify separate consideration as independent units. Where a corporation is engaged in several projects which enable it to derive benefits from them that are not inherent in any of the projects when standing alone, the enterprise is unitary. . . . Multiformity in business activity exists where two separate and segregated enterprises are not related to each other and are conducted as separate and independent units, and the corporation derives benefits from each independent unit that are not related to the operation of the other units."

In Commonwealth v. Ford Motor Company, 350 Pa. 236, at page 245, Mr. Justice Allen M. Stearne, speaking for the court, incorporated the following quotation:

"In a *unitary* enterprise, property outside the state, when correlated in use with property within the state, *necessarily affects the worth of the privilege within the state.* Financial power inherent in the possession of assets may be applied, with flexibility, at whatever point within or without the state the managers of the business may determine.

". . . The weight, in determining the value of the intra-state privilege, given the property beyond the state boundaries is but a recognition of the very real effect its existence has upon the *value of the privilege granted within the taxing state.*"

Appellant makes some point of the fact that income from intangibles is included in the tax base. We repeat what we said above, that this is not a tax on property, but a tax on the privilege of doing business in Pennsylvania. Under these circumstances it has been held that although certain assets may not be taxable per se, and may in effect be tax exempt, they may be included in a base which is used in part to measure the value of a privilege. This is true particularly of nontaxable United States securities and intangibles. Thus, in Commonwealth v. National Biscuit Company, 390 Pa. 642, at page 658, it is stated:

"The United States Supreme Court has consistently ruled that a State may constitutionally levy an excise tax on corporations for the privilege of doing business, and measure the tax by the property or net income of the corporation, including tax exempt United States securities or the income derived therefrom."

Again referring to Commonwealth v. Ford Motor Company, supra, the opinion quotes from the United States Supreme Court decision, at page 246, as follows:

"It is therefore well settled by the decisions of this Court that when the sovereign authority has exercised the right to tax a legitimate subject of taxation as an exercise of a franchise or privilege, it is no objection that the *measure* of taxation is found in the income produced in part from property which of itself considered, is nontaxable."

Considering the business of defendant as a whole, we cannot escape the conclusion that research, inventions, patents, licenses, etc., owned and controlled to such a large extent, are a most important feature of defendant's business. The end result of all these things is to establish a manufacturing process applying the patents. It is our considered judgment that the business of defendant is so intertwined with these patents that they contribute markedly to the value of the business transacted in Pennsylvania and to the privilege granted. In other words, we consider this operation to be strictly a unitary business.

It is obvious, also, that the difference in the amount of tax between that settled by the Commonwealth and that contended for by defendant is relatively insignificant. We, therefore, feel impelled to make the following conclusions of law and decree nisi:

### Conclusions of Law

1. The business conducted by defendant is unitary in character.

2. The royalties and technical fees were properly included in the tax base.

3. The tax as computed by the Commonwealth is correct.

4. Judgment should be entered for the Commonwealth and against defendant.

### Decree Nisi

And now, to wit, January 13, 1959, the appeal is dismissed and judgment is hereby directed to be en-

tered in favor of the Commonwealth and against defendant in the sum of $18,987.80, which sum having been paid, the judgment shall be marked satisfied upon payment of the costs, unless exceptions hereto be filed within 30 days of the service hereof, as provided by law.

The prothonotary is directed to notify the parties or their counsel of this decree forthwith.

RICHARDS, P. J. (Specially Presiding), March 16, 1960.—Defendant has filed 18 exceptions to our opinion and decree nisi of January 13, 1959. Each of the matters raised by these exceptions has been previously argued and disposed of by the court. We see no reason to repeat what we there said.

### Order

And now, to wit, March 16, 1960, the exceptions are dismissed at the cost of defendant. Judgment shall be entered in accordance with the decree nisi.