## Tax Review Board v. The Nestle Co., Inc.

*Leon H. Kline*, for appellant.

*Leonard B. Rosenthal*, Assistant City Solicitor, for appellee.

REIMEL, J., December 11, 1961.—This is an appeal by the Nestle Company, Inc., from the decision of the Tax Review Board which affirmed the department of collections' denial of appellant's claim for refund. Refund was requested of mercantile license taxes paid for the years 1953 to 1957, inclusive, amounting to $19,362.97 in tax and $880.74 in interest, or a total of $20,243.71.

Appellant, a New York corporation, whose principal office is in White Plains, New York, manufactures and sells various chocolate products. It is a foreign corporation registered to do business in the Commonwealth of Pennsylvania since January 3, 1933, and has regularly filed income, franchise, corporate loans and bonus reports. Appellant corporation has an office in Camden, New Jersey, which is the headquarter for the Middle Atlantic region which includes the southern half of New Jersey, the eastern half of Pennsylvania, Delaware, Maryland, Virginia and West Virginia. Approximately 95 salesmen operate out of that office within this region, which includes Philadelphia. No office has been maintained in Philadelphia, and appellant has no bank account in Philadelphia.

Appellant conducted its business as follows: petitioner's salesmen, who have their headquarters at the Camden, New Jersey, office, are engaged in the promotion of appellant's products among noncustomer retailers, and take orders from its customers. When a promotional salesman receives an order from a retailer (noncustomer), it is turned over by appellant to jobbers. Orders from customers are received and accepted at the Camden, New Jersey office. That office processes the orders, i.e., makes copies for filing, billing, accounting, etc. Orders are filled, depending upon the kind and quantity of merchandise ordered. Orders for coffee, for example, are processed at the Camden office, and sent to the appellant's plant at Freehold, New Jersey, and shipment is made directly from there. If the order is for chocolate, it would be shipped from appellant's plant at Fulton, New York. If the order is for less than a carload lot, it would probably be shipped from a warehouse located in Philadelphia; if it concerned only one type of merchandise, it might be shipped from one of ten warehouses located in the region of the Camden office. Less than half of the

volume of business from Philadelphia customers is shipped from a warehouse. Payments for merchandise by customers are sent by the customer to appellant at a post office box in New York City, New York.

Appellant keeps merchandise in two Philadelphia public warehouses. The primary warehouse is the Cee-Bee Warehouse, located at 25th and Wharton Streets, where appellant stores a complete line of its products, and in addition, advertising materials which are picked up by salesmen and delivered by them to customers. During the years in question, more than 1,000 deliveries a year emanated from the Cee-Bee Warehouse to Philadelphia customers. Appellant stores only milk at a second warehouse, the Pennsylvania Warehouse and Safe Deposit Co., located at Delaware Avenue and Lombard Streets, Philadelphia. During the years in question, there were about 200 deliveries a year made from this warehouse to Philadelphia customers. Bills of lading and shipping orders are sent by the Camden office to the warehousing company, which contacts a public carrier (one carrier is used for all Philadelphia deliveries, the arrangement therefor having been made by appellant), who delivers the orders. The carrier sends its bills to appellant's Camden office, from which it is paid. Shipments are made from the Philadelphia warehouses not only to appellant's Philadelphia customers, but to all of its customers in the Middle Atlantic region and in the northern part of the southern states. However, the receipts herein involved on which the tax was assessed and paid were derived from merchandise delivered from the Philadelphia warehouses to Philadelphia customers only.

Appellant also sells "coatings", i.e., bulk chocolate used by bakeries and candy manufacturers, under contracts, which provide that the merchandise is "F.O.B." Fulton, New York. Appellant maintains at

the public warehouse in Philadelphia the "coatings" which are the subject of such contracts, and from which the contracting customer's requests for deliveries are supplied. Customers do not call at the warehouses for merchandise.

Appellant stores its products in the Philadelphia warehouses as a service to customers, insuring a ready supply, thus avoiding delays in deliveries. Another reason for warehousing in Philadelphia is lack of storage space for all finished products at the appellant's manufacturing plant.

Appellant's salesmen operating in the Philadelphia area also carry some goods in their automobiles. If a customer needs a small quantity which the salesman happens to have, he may make immediate delivery, but larger case quantities would have to be delivered from the warehouse.

The Tax Review Board held that appellant was "doing business" in Philadelphia within the meaning of the Mercantile License Tax Ordinance. It further held that such application of the mercantile license tax did not violate the Commerce Clause (Article I, section 8, cl. 3) of The United States Constitution. Finally, the board held that the Sterling Act of August 5, 1932, P. L. 45, 53 PS §15971, did not render appellant immune from the mercantile license tax by reason of the fact that appellant is a foreign corporation doing business in Pennsylvania and subject to the Pennsylvania franchise tax under the Act of May 16, 1935, P. L. 184, 72 PS §1871, and the corporate net income tax under the Act of May 16, 1935, P. L. 208, as reenacted and amended, 72 PS §3420a, et seq.

On appeal before this court, appellant first contends that its activities do not constitute "doing business" within Philadelphia as that term is used under Pennsylvania law, and therefore during the period involved the taxpayer did not engage in taxable activity.

The mercantile license tax is an excise tax upon the privilege of transacting business measured by the gross volume of business annually transacted: National Biscuit Co. v. Philadelphia, 374 Pa. 604 (1953). The Philadelphia Code of General Ordinances §19-1001 (6) equates "gross volume of business" to the "gross receipts" of a business with certain exclusions not here applicable. Section 19-1001 (5) defines "gross receipts" as: "Cash, credits and property of any kind or nature received in, or attributable to, Philadelphia from any business or by reason of any sale made or *service rendered* or commercial or business transaction occurring in Philadelphia" (Italics supplied). Section 19-1001 (1) of the code defines "business" as: "The carrying on or exercising for gain or profit within the City any trade, business, profession, vocation, or making sales to persons within the City, or any manufacturing, commercial or financial activity, *service* or business, . . ." (Italics supplied).

As stated in Lutz v. Foster & Kester Co., Inc., 367 Pa. 125, 129 (1951), there is no general standard whereby it may be conclusively determined in all instances what constitutes "doing business". The decision in each case depends upon its own peculiar facts. The case of Motch & Merryweather Machinery Co. v. Pittsburgh School District, 381 Pa. 619 (1955), relied on by appellant, in which the Supreme Court held that mere solicitation of business within a municipality by a foreign corporation does not in itself constitute doing business and subject it to a municipal tax on the privilege of doing business in the municipality, is not determinative of the issue presented in this proceeding. As stated by the board in its opinion in this case:

"The taxpayer here regularly maintained in the City an extensive stock of goods from which local deliveries were continuously made in substantial quantity. In the Motch case, the Court specifically pointed out: 'No

stock of goods or samples are kept in Pennsylvania, and appellee's goods have never come to rest physically in Pittsburgh'. (381 Pa. at 621). In other words, the Court there had before it a situation where the *only* activity in the taxing jurisdiction was solicitation for purchases to be filled by direct *interstate* delivery of goods from outside the State. The Court carefully made clear that it was not ruling on the type of situation now before us."

In the instant case, appellant carried on "other activities" in addition to solicitation. That delivery from a local stock of goods can be an important element to the concept of doing business is manifest by Commonwealth v. The American Sugar Refining Co., No. 2, 47 D. & C. 276 (1942). It is apparent that appellant renders a "service" to its customers by maintaining a local stock in trade, from which local deliveries are conveniently and quickly made. We therefore agree with the board that taxpayer's method of operation gives it important practical advantages of a local store, and we conclude that it is "doing business" in Philadelphia within the meaning of the Mercantile License Tax Ordinance.

Appellant's second contention is that it is engaged in interstate commerce and therefore subjection to the mercantile license tax would violate Article I, section 8, cl. 3, of the United States Constitution. While a direct state tax upon the privilege of conducting interstate commerce is invalid, nevertheless, it has been held that although a transaction viewed as a whole may be one in interstate commerce, there may be certain "intrastate events" or "local activities" in connection therewith that permit the imposition of a state tax: Keystone Metal Co. v. Pittsburgh, 374 Pa. 323, 327 (1953). The board's determination that the imposition of the tax would not violate the Commerce Clause of the United States Constitution is supported by com-

petent evidence. The taxable transactions were consummated within the city of Philadelphia by delivery of the goods from Philadelphia warehouses to Philadelphia buyers. The taxpayer maintained a stock of goods in local warehouses so that deliveries could be made more conveniently and promptly. The taxable activity was distinct from the interstate movement of the goods, and took place after the interstate journey ended. There are, therefore, sufficient local incidents to validate the tax, even though the total activities from which the transaction arises may have incidental interstate attributes: International Harvester Co. v. Department of Treasury, 322 U. S. 340 (1943); Norton Company v. Department of Revenue of Illinois, 340 U. S. 534 (1950); Keystone Metal Co. v. Pittsburgh, 374 Pa. 323 (1953).

Finally, taxpayer contends that it is not liable for the mercantile license tax because, as a foreign corporation doing business in Pennsylvania, it is subject to the Pennsylvania franchise tax under the Act of May 16, 1935, P. L. 184, 72 PS §1871, and the corporate net income tax under the Act of May 16, 1935, P. L. 208, as reenacted and amended, 72 PS §3420a et seq. The immunity from the mercantile license tax is claimed under the Sterling Act, the Act of August 5, 1932, (special session 1932) P. L. 45, 53 PS §15971, which denies to the city of Philadelphia the power to tax ". . . a privilege, transaction, subject or occupation . . ." which is subject to a "State tax or license fee". The taxpayer argues that the mercantile license tax is upon the same subject as the state franchise tax and the state corporate net income tax. We fail to see any merit in appellant's contention in view of the Supreme Court's decision in National Biscuit Co. v. Philadelphia, 374 Pa. 604 (1953), which has been followed by the majority opinion in Commonwealth v. National Biscuit Co., 390 Pa. 642 (1957).

In accordance with this decision, the court enters the following:

*Order*

And now, December 11, 1961, the appeal from the Tax Review Board is dismissed, the decision of the Tax Review Board is affirmed and appellant's claim for refund is denied.