Liberty Bell Racing Association *v.* City of Philadelphia Tax Review Board.

Liberty Bell Racing Association *v.* School District of Philadelphia. City of Philadelphia, Tax Review Board and School District of Philadelphia, Appellants.

Argued April 3, 1984, before President Judge CRUMLISH, JR., and Judges ROGERS, MacPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Pamela Foa,* with her, *Vanessa J. Lawrence, Ellis Eisen,* Assistant City Solicitor, *Ellis M. Saull,* Chief Assistant City Solicitor, and *Marilyn Z. Kutler,* City Solicitor, for appellants.

*William P. Thorn, Wolf, Block, Schorr* and *Solis-Cohen,* for appellee.

OPINION BY JUDGE COLINS, November 13, 1984:

The City of Philadelphia, Tax Review Board and the School District of Philadelphia (appellants) appeal a Philadelphia County Court of Common Pleas decision holding that Liberty Bell Racing Association (appellee) is not subject to the City's Mercantile License Tax[1] and the School District's General Business

---

[1] Philadelphia Code §§19-1000—1005.

Tax,[2] due to the Commonwealth's preemption of taxation in this area. We affirm.

Appellee, a Pennsylvania corporation, was organized in 1960 to construct and operate a harness racing track in Northeast Philadelphia. In 1963 appellee built a racetrack, known as Liberty Bell Park, and began to conduct harness racing there.

On November 1, 1970, appellee organized Liberty Bell Park, Inc., a separate corporation, and transferred to it all of the real estate, physical facilities, and leases it formerly held.[3] In addition, appellee, as lessee, entered into a lease with Liberty Bell Park, Inc., as lessor, to permit it to conduct harness racing at Liberty Bell Park twice a year.

Prior to the transfer to Liberty Bell Park Inc., appellee received rental income from the tenant racing associations. After the transfer, however, Liberty Bell Park, Inc. received this income and appellee's income was derived from admissions, parking fees, the sale of food and beverages, wagering, the sale of programs, commissions from the sale of harness horses, fees from tipsheets, fees from pictorial displays and advertising, and other miscellaneous income such as dividends on stock and interest on debentures it held.

Appellee based its 1971 Mercantile License Tax and 1971 General Business Tax on the actual amount of revenue derived in 1971, rather than the volume of business during the preceding year 1970. Its 1971 revenue was approximately $2.6 million dollars less than that of 1970. Both the City and the School District based their determination on the total receipts

---

[2] Act of May 23, 1949, P.L. 1669, *as amended*, 24 P.S. §§584.1-584.12.

[3] Appellee formerly had leases with William Penn Racing Association, Continental Downs and Eagle Downs.

for 1970, including rental income and assessed the appellee for tax deficiencies for 1971.

.The Philadelphia Tax Review Board and the School District Board of Tax Appeals upheld the validity of these assessments. These determinations were appealed to Common Pleas Court, where, for the first time, appellee claimed that the Mercantile License Tax and General Business Tax could not properly be imposed since the Commonwealth had preempted the regulation of harness racing, including the ability to impose taxes.[4] The Court of Common Pleas of Philadelphia County[5] addressed the issue of preemption and held that the field of harness racing had, in fact, been preempted by the Commonwealth. The instant appeals were then filed in a timely fashion.

The question presented is whether appellants City of Philadelphia and School District of Philadelphia may validly impose Mercantile Taxes and General Business Taxes upon appellee or whether the State had preempted the field through the enactment of the Harness Horse Racing Meeting Corporations Act (Act).[6]

If the State had preempted this area, then Philadelphia had no power to act.

---

[4] The Court of Common Pleas determined that it could address this issue since a tax upon income not within the reach of the levying body's taxing power violates the Due Process Clause, see *ASARCO, Inc. v. Idaho State Tax Commission*, 458 U.S. 307 (1982), since Section 754(b) of the Local Agency Law, 2 Pa. C. S. §754(b), permits review of issues in violation of constitutional rights and since such an issue may be raised at any time by the parties or sua sponte by the Court. *See Lang v. Tax Review Board*, 69 Pa. Commonwealth Ct. 525, 451 A.2d 1057 (1982).

[5] These two appeals were consolidated by stipulation of the parties.

[6] Act of December 22, 1959, P.L. 1978, *formerly* 15 P.S. §§2601-2625, repealed by the Act of December 17, 1981, P.L. 435. A similar provision is now found in 4 P.S. §§325.101-325.402.

In *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 380-81, 77 A.2d 616, 619-20 (1951), our Supreme Court stated that when laws

are silent as to whether municipalities are or are not permitted to enact supplementary legislation or to impinge in any manner upon the field entered upon by the state; . . . the question whether municipal action is permissible must be determined by an analysis of the provisions of the act itself in order to ascertain the probable intention of the legislature in that regard.

The Harness Horse Racing Meeting Corporations Act and the creation of the State Harness Racing Commission[7] manifest the legislature's intention to exclusively occupy the State harness racing field. The Act regulates virtually all aspects of harness racing. There are provisions, for example, governing incorporation for the purpose of conducting harness horse racing at which pari-mutuel betting is conducted, 15 P.S. §2603, filing of information concerning stock transfers, 15 P.S. §2604, pari-mutuel betting at harness races, 15 P.S. §2605, State admission tax, 15 P.S. §2606, licenses for harness race meetings, 15 P.S. §2607, prohibition of interest by public officers, public employees and party officers in pari-mutuel racing activities, 15 P.S. §2607.2, officials at harness horse race meetings, 15 P.S. §2608, licenses for participants and employees at harness race meetings, 15 P.S. §2609,

---

[7] The Legislature established the State Harness Racing Commission to supervise the activities of all State harness race meetings at which pari-mutuel betting is conducted, 15 P.S. §2602(a). The Legislature gave the Commission various specific powers and in addition provided that "the commission may adopt rules and regulations . . . to carry into effect [the] purposes and provisions [of the Harness Horse Race Meeting Corporations Act] and to prevent [its] circumvention or evasion." *Id.*

power of Harness Racing Commission to impose fines and penalties, 15 P.S. §2610, refunds, 15 P.S. §2611, place and manner of conducting pari-mutuel betting, 15 P.S. §2612, books and records of pari-mutuel betting, 15 P.S. §2613, filing of certain agreements with the State Harness Racing Commission, 15 P.S. §2614, disposition of pari-mutuel pools, 15 P.S. §2615, disposition and appropriation of funds accruing under the provisions of the Act, 15 P.S. §2616, revocation of licenses, 15 P.S. §2617, hearing of refusal of revocation of license, 15 P.S. §2618, approval of plans of corporation, 15 P.S. §2619, local option, 15 P.S. §2620, prohibition of wagering by certain officials, employees and minors; prohibition of attendance by minors, 15 P.S. §2621, free passes, cards or badges, 15 P.S. §2622, county or political subdivision agricultural or other fairs held within the State holding harness race meetings not licensed to conduct pari-mutuel betting, 15 P.S. §2623, and employees at harness race meetings, 15 P.S. §2624.

More specifically, the Harness Horse Race Meetings Corporations Act sets forth a schema of taxation delineating what taxes may be imposed on harness racing.

The Act provides that every corporation holding a harness horse race shall collect a tax of five per centum of the admission price.[8] The Act also provides for the imposition of a tax of five per centum on the amount wagered each day, to be paid to the Department of Revenue,[9] and if a race is held within school districts of the first class, the imposition of a tax of

---

[8] This tax shall be paid through the Department of Revenue into the State Treasury to the credit of the State Harness Racing Fund, 15 P.S. §2606.

[9] This goes into the State Treasury for the credit of the State Harness Racing Fund, 15 P.S. §2615.

two per centum of the amount wagered each day for general school purposes.[10]

Finally, "each permit holder shall be allowed to retain the odd cents of all redistribution to be made on all mutuel contributions exceeding a sum equal to the next lowest multiple of ten, subject to a tax of fifty per centum of the total sum of such odd cents.'"[11]

After reviewing the Commonwealth's Harness Horse Race Meeting Corporations Act, we conclude that the Legislature had clearly indicated that its statewide regulation of harness racing was intended to preempt the field as to local taxation as well as regulation. *See Pittsburgh v. Allegheny Valley Bank of Pittsburgh*, 488 Pa. 544, 412 A.2d 1366 (1980).

We, therefore, hold that the State has preempted the harness racing field.[12]

Accordingly, we affirm the order of the Court of Common Pleas.

### ORDER

AND Now, November 13, 1984, the orders of the Court of Common Pleas of Philadelphia County, Nos. 5002 and 3987, dated May 11, 1983, are hereby affirmed.

Judge PALLADINO dissents.

---

[10] Other permit holders pay a tax of two per centum of the amount wagered each day. This amount is paid to the Department of Commerce to be distributed to eligible townships and boroughs having population of less than 10,000 or their municipal authorities, for projects providing for the construction, rehabilitation, alteration, expansion or improvement of water facilities, sewerage facilities and access roads. *Id.*

[11] This "tax is hereby imposed and shall be paid by the permit holder to the Department of Revenue to the State Harness Racing Fund," 15 P.S. §2615.

[12] Since we conclude that the Harness Horse Race Meeting Corporations Act preempts the entire field of State harness racing, we see no reason to distinquish between harness and non-harness related activities and determine if a tax can be imposed solely on the latter.