578 A.2d 618

**RIEDERS, TRAVIS, MUSSINA, HUMPHREY & HARRIS, Appellants,**

v.

**CITY OF WILLIAMSPORT and Williamsport Area School District, Appellees.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1990.

Decided July 30, 1990.

Petition for Allowance of Appeal
Denied Dec. 12, 1990.

Ronald C. Travis, Rieders, Travis, Mussina, Humphrey & Harris, Williamsport, for appellants.

Norman M. Lubin, Asst. Sol., for appellee, City of Williamsport.

Nathan W. Stuart, Solicitor, for appellee, Williamsport Area School Dist.

Before CRUMLISH, Jr., President Judge, and CRAIG, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

PELLEGRINI, Judge.

Rieders, Travis, Mussina, Humphrey & Harris (Rieders) appeal the dismissal of a complaint filed as a class action for declaratory judgment in the Court of Common Pleas of Lycoming County, by which Rieders sought an exemption from the City of Williamsport and Williamsport Area School District (School District) business privilege tax.

The School District enacted a Mercantile and Business Privilege Tax (Ordinance) pursuant to the authority conferred by the Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. § 6901-6924. The tax is imposed upon the gross income of businesses and professions performing services within the School District's jurisdiction. Rieders, a law firm organized as a partnership, filed this action, seeking a refund of the business privilege taxes that it paid, as well as the refund of taxes paid by those similarly situated for the tax years 1985, 1986 and 1987.

Rieders' claim for tax refunds is based on its contention that the School District is preempted from levying taxes on the privilege of practicing law because the practice of law is subject to pervasive regulation by our Supreme Court. The School District filed preliminary objections, contending that such regulation was not sufficiently pervasive as to preclude it from levying such a tax on the practice of law. The trial court sustained the School District's preliminary objections and the instant appeal followed.

■ The issue presented is whether the trial court erred in determining that the authority of the Supreme Court of Pennsylvania in regulating the practice of law is not so pervasive and uniform as to preempt the School District from levying and collecting taxes from law firms when the Supreme Court actively supervises the practice of law statewide through its enactment and enforcement of disciplinary rules and regulations.

Relying on the Pennsylvania Supreme Court decision in *Commonwealth of Pennsylvania v. Wilsbach Distributors,* 513 Pa. 215, 519 A.2d 397 (1986), and *City of Pittsburgh v. Allegheny Valley Bank,* 488 Pa. 544, 412 A.2d 1366 (1980), Rieders contends that where there exists a pervasive, unified, statewide regulation of a business or profession, the pervasive regulatory scheme preempts a municipality from enacting ordinances regulating or taxing that field. Rieders argues that Article V, Section 10 of the

Pennsylvania Constitution,[1] authorizing the Pennsylvania Supreme Court to supervise the practice of law within the state, is comparable to the regulatory schemes in the state Liquor Code[2] and the Banking Code,[3] which have both been preempted from local taxation. As such, Rieders asserts that the practice of law is also exempt from local taxation.

Both *Wilsbach* and *Allegheny Valley Bank* dealt with subjects which historically have been the subject of pervasive government regulation. In *Wilsbach*, an importing distributor of malt and brewed beverages was exempted from paying a tax enacted by the City of Harrisburg on the privilege of doing business within the City. The Pennsylvania Supreme Court found that it was the pervasive control over all phases of the liquor industry, in tandem with the extensive taxation and fees imposed and the exercise of regulatory power when dealing with alcoholic beverages, that manifested the legislature's intent to control the industry and preempt the field.[4] This regulation of the liquor industry has unique constitutional status as a result of the passage of the Twenty–First Amendment to the United

1. Article V, Section 10 of the Pennsylvania Constitution provides: [P]rescribe general rules governing practice, procedure and the conduct ... for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of this judicial branch ...

2. Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101–9–902.

3. Banking Code of 1965, Act of November 30, 1965, P.L. 847, *as amended,* 7 P.S. §§ 101–2204.

4. The Liquor Code vests the state with the sole authority to determine whether alcoholic beverages, their manufacture, gift, purchase, sale, possession or transportation, is permitted or prohibited within Pennsylvania. The Liquor Control Board decides which beverages are bought and sold, who may sell on a retail and wholesale level, for what prices beverages may be bought and sold, and to whom distributors and wholesalers licenses are issued, as well as controlling the geographical location of its licensees. The Liquor Control Board also decides the physical structures in which beverages may be kept and sold. Moreover, in addition to the revenue that the Commonwealth generates by operating state liquor stores, the state also raises revenue by its imposition of four taxes on all purchases of alcoholic beverages. *Wilsbach,* 513 Pa. at 221, 222, 519 A.2d at 401.

States Constitution, which vested in the states total control over liquor production and distribution.[5]

The failure of banks during the Great Depression resulting in the need for total state control over all aspects of banking was a key element in the Supreme Court's analysis in *Allegheny Valley Bank.* In that case, the City of Pittsburgh was not permitted to impose its Business Privilege Tax upon the banking activities of state banks because of the broad supervisory power given by the General Assembly to the State Department of Banking. The Supreme Court held that the Department's regulatory scheme, established to protect depositors, creditors and shareholders by insuring the safe conduct of business, to conserve assets, to promote competition and maintain public confidence through progressive banking, would be undermined if Pittsburgh were permitted to tax banks within its jurisdiction. Banking, like the manufacture and sale of liquor, has been the subject from early in the history of our nation of pervasive regulation and public policy debate.[6]

With respect to the regulation of the legal profession, there is an absence of the unique public policy and historical factors behind the regulation of the liquor and banking industries contained in both *Wilsbach* and *Allegheny Valley Bank.* Likewise, there is an absence of pervasive regulation of attorneys by the Supreme Court that would result in preemption from local taxation. The purpose of the attorney disciplinary system does not encompass regulating law firm business activity, only the professional conduct of its members. Article V, Section 10 of the Pennsylvania Constitution did not give to the Supreme Court anything more than the authority over the admission, monitoring and discipline of attorneys' professional and ethical behavior. This type of regulation is substantially different and less pervasive than the regulations mandated

5. *See Fantastic Plastic, Inc. v. City of Pittsburgh,* 32 Pa.Commonwealth Ct. 41, 377 A.2d 1051 (1977).

6. *See, e.g., McCulloch v. State of Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).

in the Liquor and Banking Codes. The Supreme Court has held that its general supervisory power over the bar is not so all encompassing as to preempt the applicability of the State Ethics Act[7] which prescribes certain conduct for attorneys who work for governmental agencies. *Maunus v. State Ethics Commission*, 518 Pa. 592, 544 A.2d 1324 (1988).

Additionally, this court has previously held that a regulatory scheme that merely monitors the admission and conduct of a profession is not sufficiently pervasive to preempt the imposition of local taxes. In *Helsel, Inc. v. City of Harrisburg*, 129 Pa.Commonwealth Ct. 1, 564 A.2d 546 (1989), a real estate broker contended that the General Assembly, by enacting the Real Estate Licensing and Registration Act,[8] established the Real Estate Commission to regulate the conduct of real estate brokers and salesmen, and precluded the City of Harrisburg from imposing a business privilege and mercantile tax on real estate brokers and salesmen. Distinguishing *Wilsbach* and *Allegheny Valley Bank*, which were similarly cited as authority for preemption,[9] this court found that it was not the legislature's intent to preempt the real estate field as it had done in the banking, harness racing and liquor industries.

> [W]e find that it merely established a system for professional registration to control the ethical conduct of real estate brokers. The Act does not provide for the perva-

7. The Act of October 4, 1978, P.L. 883, as reenacted and amended by the Act of June 26, 1989, P.L. 26, 65 P.S. § 401–411.

8. Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S. §§ 455.101–455.902.

9. In *Helsel*, the parties also cited *Liberty Bell Racing v. City of Philadelphia Tax Review Board*, 86 Pa.Commonwealth Ct. 83, 483 A.2d 1063 (1984), as authority for preemption of local taxation. In that case, this court found that the Commonwealth had preempted the field of harness racing through the enactment of the Harness Horse Racing Meeting Corporations Act, Act of December 22, 1959, P.L.1978, *formerly* 15 P.S. §§ 2601–2624, repealed by the Act of December 17, 1981, P.L. 435, so as to prevent local taxation. As with other areas where preemption exists, the Harness Horse Racing Meeting Corporations Act regulated virtually every aspect of the industry and specifically sets forth a scheme of taxation delineating what taxes could be imposed on harness racing.

sive regulation of every aspect of the real estate industry as the acts in the industries discussed in the above cases. We, therefore, hold that the real estate field has not been preempted.

*Helsel*, 129 Pa.Commonwealth Ct. at 3, 564 A.2d at 547. As in *Helsel*, the Supreme Court's oversight of the admission and professional conduct of the bar is not the pervasive regulation over every aspect of the practice of law that is necessary to preempt a local tax from applying a general business tax to attorneys.

■ Even if the Supreme Court's regulation of the practice of law were much more pervasive, its regulation could never be so pervasive as to preempt local taxation of attorneys from a general applicable business privilege tax. Under Article XIII of our Constitution, the General Assembly is vested with the sole power to tax. Preemption from taxation is the reservation by the General Assembly, either implicitly or explicitly, to itself of the power to tax or not to tax. The Supreme Court cannot preempt local taxes because it cannot reserve any power to tax since it is devoid of any such power. As the Supreme Court stated in *Leahy v. Farrell*, 362 Pa. 52, 57, 66 A.2d 577, 579 (1949):

> Control of state finances rests with the legislature, subject only to constitutional limitations ... The function of the judiciary to administer justice does not include the power to levy taxes in order to defray the necessary expenses in connection therewith. (Emphasis in original); (citations omitted).

Citing *Leahy*, this Court, in *Meitner v. Township of Cheltenham*, 75 Pa.Commonwealth Ct. 46, 460 A.2d 1235 (1983), held that the Supreme Court's promulgation of Pa.R. D.E. 219, imposing fees on attorneys to pay for disciplinary administration and enforcement of attorneys, did not divest a local municipality of the power to levy a business privilege tax because the Supreme Court had no constitutional authority to tax, and hence, no ability to preempt.

Because the Supreme Court cannot divest a local taxing authority's power to tax, and because the Supreme Court's

regulation of attorneys is not sufficiently pervasive, there is no preemption, and consequently, no exclusion for attorneys from paying the School District's business privilege tax. Accordingly, we affirm the order of the trial court.

## ORDER

AND NOW, this 30th day of July, 1990, the order of the Court of Common Pleas of Lycoming County, No. 88-01624, dated July 19, 1989, is affirmed.