601 A.2d 875

**CITY OF PHILADELPHIA**

v.

**TAX REVIEW BOARD to the Use of Janney Montgomery SCOTT.**

**Appeal of Janney Montgomery SCOTT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 1990.

Decided Jan. 3, 1992.

P.J. Di Quinzio, for appellant.

Rick L. Ames, Chief Asst. City Sol., for appellee.

Before CRAIG, President Judge, and COLINS, PALLADINO, SMITH, PELLEGRINI, KELLEY and BYER, JJ.

KELLEY, Judge.

Janney Montgomery Scott, Inc. (Janney) is a securities dealer in the City of Philadelphia. Janney filed refund petitions with the Philadelphia Department of Revenue for payments of the city's mercantile license tax which is based

on gross receipts. These petitions were denied and Janney appealed to the Philadelphia Tax Review Board which granted the refunds on the basis that securities dealers are exempt from the tax because the state has preempted the field of securities regulation. The city appealed to the Court of Common Pleas of Philadelphia County which reversed. Janney appealed to this Court and presents the preemption question as the sole issue.

The preemption doctrine in the context of local taxation was first applied in 1980 when the Supreme Court decided *Pittsburgh v. Allegheny Valley Bank*, 488 Pa. 544, 412 A.2d 1366 (1980). In examining whether a local business privilege tax was preempted with respect to banks by the state's regulation of the banking industry, the court noted that it was required to ascertain the probable intention of the legislature in enacting the relevant legislation in order to determine whether municipalities are permitted to impinge upon the field entered by the state. The court held that the extensive regulation of the banking industry by the state preempted the local tax. In so holding, the court relied upon the unique historical status of the banking industry and the state's interest in preserving the soundness of the industry. Because of these unique considerations, it is difficult to apply the rationale of *Allegheny Valley Bank* in other contexts.

The next case to hold that a local tax was preempted by the state's regulation of an industry was our decision in *Liberty Bell Racing Association v. Philadelphia Tax Review Board*, 86 Pa. Commonwealth Ct. 83, 483 A.2d 1063 (1984). We held in *Liberty Bell* that the legislature, by enacting the Harness Horse Racing Meeting Corporations Act,[1] intended to preempt the field as to local taxation as well as regulation. After reviewing the pervasive regulation under the Act, the court noted that "the ... Act sets forth a schema of taxation delineating what taxes may be

1. Act of December 22, 1959, P.L.1978, *formerly* 15 P.S. §§ 2601–2625, repealed by the Act of December 17, 1981, P.L. 435. A similar provision is now found in 4 P.S. §§ 325.101–325.402.

imposed on harness racing." *Liberty Bell*, 86 Pa. Common-wealth Ct. at 88, 483 A.2d at 1065. The Court cited taxes on admissions, on wagers (including a portion allocated to school districts of the first class if the track is so located), and on the odd cents retained from redistributions.

The Supreme Court held that the imposition of a local tax on a beer distributor was preempted by the state's regulation of the liquor industry in *Commonwealth v. Wilsbach Distributors, Inc.*, 513 Pa. 215, 519 A.2d 397 (1986). *Wilsbach* is of limited precedential value since the opinion announcing the judgment of the court by Justice Papadakos was joined only by Justice Larsen. In finding that the legislature had preempted the tax, this opinion, while not citing *Liberty Bell*, points to the extensive taxes imposed on sales of alcohol, as well as the pervasive regulation of the industry.

Justice Nix, who had dissented in *Allegheny Valley Bank*, again rejected the preemption analysis in a concurring opinion, but found the tax was prohibited under Section 3 of the Local Tax Enabling Act[2] based on the state's taxation of the industry. Justice Zappala's concurrence, joined by Justice McDermott, expresses serious doubts about the rationale of *Allegheny Valley Bank* "which blurred the lines between the regulatory/police power and the taxation power to find that legislative pre-emption of the former supported an inference of pre-emption of municipal action in the latter." *Wilsbach*, 513 Pa. at 227, 519 A.2d at 403–04. Justice Zappala's opinion appears to concur in the result for the sake of *stare decisis*, noting that "the case at bar presents no opportunity to overrule" *Allegheny Valley Bank*. *Wilsbach*, 513 Pa. at 228, 519 A.2d at 404.

In his dissent, Justice Flaherty, joined by Justice Hutchinson, argues that the holding of *Allegheny Valley Bank* was not based on the degree of state regulation, but was instead based on the goal inherent in that regulation, namely the protection of the financial soundness of banking institutions. Justice Flaherty went on to explain that local taxa-

2. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6903.

tion directly impinged on that goal. He further argued that the Liquor Code [3] contains no similar goal and is therefore distinguishable from the legislation involved in *Allegheny Valley Bank*. [4]

Recently, our Court has twice declined to apply the preemption doctrine. In *Helsel, Inc. v. City of Harrisburg*, 129 Pa. Commonwealth Ct. 1, 564 A.2d 546 (1989), a real estate broker sought a holding that the legislature intended to preempt the imposition of local taxes on real estate brokers by enacting the Real Estate Licensing and Registration Act. [5] After a brief mention of the above cases, the court stated:

> In examining the Real Estate Licensing and Registration Act, we find that it merely establishes a system for professional registration to control the ethical character and conduct of real estate brokers. The Act does not provide for the pervasive regulation of every aspect of the real estate industry as the acts in the industries discussed in the above cases. We therefore hold that the real estate field has not been preempted.

*Helsel*, 129 Pa. Commonwealth Ct. at 3, 564 A.2d at 547.

In *Rieders v. Williamsport*, 134 Pa. Commonwealth Ct. 298, 578 A.2d 618 (1990), *petition for allowance of appeal denied*, 526 Pa. 643, 584 A.2d 324 (1991), a law firm sought a holding that a school district's business privilege tax is preempted by the Supreme Court's pervasive regulation of the practice of law. In declining to so hold, this Court distinguished *Allegheny Valley Bank* and *Wilsbach* by citing the "unique public policy and historical factors behind the regulation of the liquor and banking industries", *Ried-*

3. Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101—9–902.

4. We note with interest that at least three Justices who are currently on the bench (Nix, McDermott, and Zappala) appear to disagree with the preemption doctrine entirely, while one other, Justice Flaherty, may limit it to situations where the purpose of the pervasive state regulation is to protect the financial soundness of the industry in question.

5. Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S. §§ 455.101–455.902.

*ers,* 134 Pa. Commonwealth Ct. at 302, 578 A.2d at 620, and the absence of pervasive regulation of attorneys. The Court analogized the Supreme Court's registration of attorneys to the professional registration system in *Helsel.*

 Upon reviewing the case law, it is difficult to extract a comprehensive analysis to be used whenever preemption of local taxation is claimed. Pervasive regulation of all aspects of the industry in question is perhaps the one factor which is critical. Except for the unique facts of *Allegheny Valley Bank,* extensive taxation of the industry by the Commonwealth also appears to be a crucial factor in finding preemption. It also appears from the cases declining to find preemption that a system of professional registration does not sufficiently show the legislature's intent to preempt the entire field. Above all, the courts must ascertain the probable intention of the legislature with respect to its desire to preempt local taxation.

In its brief, Janney attempts to show that the securities industry is pervasively regulated by the state under the Pennsylvania Securities Act of 1972 (Act).[6] Janney references the following items in the act: The Pennsylvania Securities Commission may exclude any persons from the definition of broker-dealer. Section 102(e)(viii) of the Act, 70 P.S. § 1–102(e)(viii). Broker-dealers and their agents must be registered or exempt from registration. Section 301 of the Act, 70 P.S. § 1–301. The Commission may prescribe standards of qualification for broker-dealers. Section 303(c) of the Act, 70 P.S. § 1–303(c). The Commission may require a minimum capital for broker-dealers and establish limitations on aggregate indebtedness of broker-dealers in relation to net capital, provided that the minimum capital is not higher and the ratio of aggregate indebtedness is not lower than that required by the federal Securities and Exchange Commission (SEC) or the National Association of Securities Dealers, Inc. (NASD), if the broker dealer is registered with the SEC or is a member of the

6. Act of December 5, 1972, P.L. 1280, *as amended,* 70 P.S. §§ 1–101—1–704.

NASD. 70 P.S. § 1–303(d). The Commission may require that surety bonds be posted by broker-dealers. 70 P.S. § 1–303(e). Every registered broker-dealer is required to maintain certain records, and to file financial reports with the Commission, and to file a correcting amendment if any information changes in any material respect. Section 304 of the Act, 70 P.S. § 1–304. The Commission is required to make periodic examinations of each broker-dealer. However, to avoid unnecessary duplication of examinations, the Commission is required to cooperate with the SEC, other states, and any national securities exchange or national securities association. 70 P.S. § 1–304(d). The Commission may, by regulation, prohibit unreasonable charges, commissions or other compensation, except that any charges which are consistent with rates set by a national securities exchange or by the SEC or a national securities association shall not be deemed unreasonable. 70 P.S. § 1–304(e). The Commission may deny, suspend, or revoke the registration of any broker-dealer, or censure any broker-dealer. Section 305 of the Act, 70 P.S. § 1–305. It is unlawful for any person whose registration has been suspended or revoked to work as a broker-dealer. Section 306 of the Act, 70 P.S. § 1–306.

Securities sold in the Commonwealth must be registered or exempt from registration. Sections 201–203 of the Act, 70 P.S. §§ 1–201–1–203. The Commission may waive the conditions for exemption and may deny or revoke any exemption. Section 204 of the Act, 70 P.S. § 1–204. The Commission may suspend or revoke any registration statement under certain specified conditions. 70 P.S. § 1–208. Prohibited practices in the offer and sale of securities are set out in Sections 401–407 of the Act, 70 P.S. §§ 1–401—1–407.

██ We cannot deny that the securities industry is subject to extensive regulation. A large part of that regulation, however, appears to relate to the ethical conduct of broker-dealers, as in *Helsel* and *Rieders*, in order to prevent fraudulent sales of securities. The intent of the legislature

in enacting the statute was to protect the investing public, *Commonwealth v. Gabriel*, 195 Pa. Superior Ct. 411, 171 A.2d 538 (1961),[7] and we cannot see how this intent encompasses a prohibition of local taxation.

■ An examination of the taxation of the industry by the Commonwealth bolsters our conclusion. There is, in fact, no "tax" imposed by the Commonwealth. Broker-dealers are required to pay fees for their licenses and to register securities and apply for exemptions. Section 602 of the Act, 70 P.S. § 1-602. While the testimony in this case indicated that the sum of these fees exceeds the expenditures of the Commission, this system of fees does not amount to the extensive system of taxation found in *Liberty Bell.*

Although this Court has found preemption of an industry on one occasion in *Liberty Bell,* we are very hesitant to expand the preemption doctrine and declare new industries to be off limits to local taxation. Each time that we do so, we act to further erode the tax base of local taxing bodies and we force those bodies to increase the tax burden on other taxpayers. *See* J. Bright, Pennsylvania Taxation, § 30.012 (1987). We therefore decline to hold that the securities industry has been preempted from local taxation.

Accordingly, the order of the Court of Common Pleas of Philadelphia County is affirmed.

BYER, J., dissents.

## ORDER

NOW, this 3rd day of January, 1992, the order of the Court of Common Pleas of Philadelphia County, No. 1817, November Term, 1988, dated May 14, 1990, is affirmed.

---

7. *Gabriel* involved the predecessor to the current act.