630 A.2d 474

**ROSE VIEW MANOR, INC.,** Appellant

**v.**

**CITY OF WILLIAMSPORT and Williamsport Area School District.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 14, 1993.

Decided July 30, 1993.

Michael J. Casale, Jr. for appellant.

Charles A. Szybist for appellee, City of Williamsport.

Fred A. Holland for appellee, Williamsport Area School Dist.

Before PALLADINO, and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Rose View Manor, Inc. (Rose View) appeals the dismissal of the complaint filed as a class action for declaratory judgment in the Court of Common Pleas of Lycoming County in which Rose View sought an exemption from the City of Williamsport and Williamsport Area School District (Williamsport) business privilege tax. We affirm.

The Commonwealth of Pennsylvania (Commonwealth) has licensed Rose View to operate a private, for profit nursing home. The Commonwealth charges Rose View an annual license renewal fee of $200.00 plus $2.00 per in-patient bed.

Williamsport enacted a business privilege tax ordinance (ordinance) pursuant to the authority granted by the Local Tax Enabling Act (LTEA)[1] which grants political subdivisions the authority to assess taxes against local businesses such as Rose View. Williamsport's ordinance subjects Rose View to taxation of its gross receipts.

Rose View filed a complaint alleging that Williamsport's authority to levy local taxes against it is preempted by the Commonwealth's license fee assessment to nursing homes like Rose View and the Commonwealth's pervasive regulation of the nursing home industry.[2] In response, Williamsport filed preliminary objections in the nature of a demurrer contending that the Commonwealth's fees and regulations upon Rose View do not preclude Williamsport from levying local taxes. The trial court sustained Williamsport's preliminary objections and this appeal followed.

On appeal to this Court,[3] Rose View argues that the trial court erred in determining that: (1) Rose View's payments of the Commonwealth's license fees did not exempt the nursing home from local taxation under Williamsport's ordinance; and (2) the Commonwealth's regulation of the nursing home industry does not preempt the field of local taxation.

 Rose View first argues that Williamsport is prevented from levying a local tax against it because the Commonwealth imposes a license fee which causes an impermissible double taxation. In order to prevent double taxation, the legislature included a prohibition in the LTEA preventing political subdivisions from taxing "a privilege, transaction, subject, occupation or personal property which is now or does hereafter

1. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–6922.

2. *See* Pennsylvania Health Care Facilities Act (PHCFA), Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§ 448.101–448.904 and the Department of Health Long Term Facilities Licensure Regulations (LTFLR), 28 Pa.Code §§ 201.1–201.32.

3. Our scope of review where a trial court sustains preliminary objections and dismisses a complaint is limited to determining whether the trial court committed an error of law or abused its discretion. *Smith & McMaster, P.C. v. Newtown Borough,* 149 Pa. Commonwealth Ct. 356, 613 A.2d 129 (1992).

become subject to a State tax or license fee." Section 2(1) of the LTEA, 53 P.S. § 6902(1).

Two lines of authority have developed regarding what the legislature meant when it exempted from local taxation, activities businesses, professions or occupations subject to a Commonwealth tax or license fee. One line of cases has focused on whether or not the Commonwealth's license fee was a "true fee." In *National Biscuit Co. v. City of Philadelphia,* 374 Pa. 604, 98 A.2d 182 (1953), several corporations claimed an exemption from Philadelphia's mercantile license tax because the corporations already paid license fees to the Commonwealth. The problem, the court pointed out, is to determine whether a charge exacted by the Commonwealth and designated as a license fee is really a "true license fee." The court attempted to resolve this problem by stating that:

> The distinguishing features of a license fee are (1) that it is applicable only to a type of business or occupation which is subject to supervision and regulation by a licensing authority under its police power; (2) that such supervision and regulation are in fact conducted by the licensing authority; (3) that the payment of the fee is a condition upon which the licensee is permitted to transact his business or pursue his occupation; and (4) that the legislative purpose in exacting the charge is to reimburse the licensing authority for the expense of the supervision and regulation conducted by it. If, therefore, even though the charge be labeled a "license fee," it cannot be regarded as such if, being merely nominal in amount and not apparently equated to the probable cost of supervision and regulation of the licensee's activities, it presumably was not legislatively intended to provide for such a cost; in such a case it must be considered as merely a registration charge intended to cover clerical costs of the issuance of the license certificate and general office expenses, and in that event it does not, of course, prevent municipal taxation ....

*Id.* at 615–616, 98 A.2d at 188.

The court further refined this method of analysis in *Philadelphia Tax Review Board v. Smith, Kline & French Labora-*

*tories,* 437 Pa. 197, 262 A.2d 135 (1970), holding that for a business or occupation subject to a Commonwealth license fee to be exempt from local taxation, the Commonwealth license fee must (1) generate a large amount of revenue and (2) the income derived must greatly exceed the administrative costs involved.

This Court cited *Smith, Kline,* as authority in *Wightman Health Center v. Office of Treasurer,* 59 Pa. Commonwealth Ct. 634, 430 A.2d 717 (1981), when a nursing home argued that, because a license fee is paid to the Commonwealth, a municipality is precluded from levying a business privilege tax. In *Wightman,* we held that Pittsburgh could levy a local tax on a nursing home's gross receipts because:

> the mere payment of a license fee is not per se preemptive of local taxing authority under the Local Tax Enabling Act [citation omitted] but becomes so only when the fee is in fact a revenue-producing exercise of the taxing power, which applies to the same subject of taxation as the challenged local measure.

*Id.* at 636, 430 A.2d at 718.

In a second line of cases, the Supreme Court held a different view in determining whether payment of a tax or license fee to the Commonwealth exempts businesses and occupations from local taxation. In *F.J. Busse Co. v. Pittsburgh,* 443 Pa. 349, 279 A.2d 14 (1971), a group of domestic and foreign corporations, engaged in the contracting and construction industry, filed a complaint in equity attacking the validity of a Pittsburgh business privilege tax ordinance. The corporations argued that the tax was invalid under the LTEA because it duplicated several already existing Commonwealth taxes (as opposed to license fees). The court set forth the following standard: to determine whether a local tax duplicates a Commonwealth tax, the incidence of each tax must be examined to determine if the subject matter embraced by each tax and the tax base to which each is applied is duplicative. If the Commonwealth and local taxes are applied to different subject

matter and to a different tax base there is no duplication.[4] Applying this test in *F.J. Busse*, the court found that Pittsburgh's business privilege tax did not duplicate the Commonwealth taxes imposed against the corporations because the ordinance did not tax the same subject matter nor was it measured by the same tax base.

In *Helsel, Inc. v. City of Harrisburg*, 129 Pa. Commonwealth Ct. 1, 564 A.2d 546 (1989), a real estate agent argued that the bi-annual license fee paid to the Pennsylvania Real Estate Commission precluded the City of Harrisburg from imposing local taxes upon the agent. The city, relying on *Smith, Kline*, argued that since the fee paid to the Pennsylvania Real Estate Commission was not a revenue-raising measure, payment of the Commission's fee did not preclude the city from levying local taxes. The Court disagreed with the city's reliance upon *Smith, Kline*, stating that, although this Court had cited the case approvingly in the past,[5] it did not believe the case had any precedential value because the case represented a plurality opinion with no more than two justices joining in any one part of the decision. We applied instead the *F.J. Busse* test in *Helsel*, and upheld the City of Harrisburg's right to levy local taxes against realtors. The Court concluded that the incidence of the state and local taxes differed because the city taxed real estate agents' gross

4. *See also Commonwealth v. National Biscuit Co.*, 390 Pa. 642, 136 A.2d 821 (1957), *appeal dismissed*, 357 U.S. 571, 78 S.Ct. 1383, 2 L.Ed.2d 1547 (1958).

5. *See Green Acres Apartments, Inc. Appeal*, 85 Pa. Commonwealth Ct. 572, 482 A.2d 1356 (1984); *Wilsbach Distributing, Inc. v. Commonwealth of Pennsylvania*, 81 Pa. Commonwealth Ct. 244, 473 A.2d 1123 (1984), *rev'd*, 513 Pa. 215, 519 A.2d 397 (1986); *Meitner v. Township of Cheltenham*, 75 Pa. Commonwealth Ct. 46, 460 A.2d 1235 (1983); *Prudential Insurance Co. v. Pittsburgh*, 38 Pa. Commonwealth Ct. 15, 391 A.2d 1326 (1978); *Pittsburgh v. Allegheny Valley Bank*, 35 Pa. Commonwealth Ct. 502, 388 A.2d 1098 (1978), *aff'd*, 488 Pa. 544, 412 A.2d 1366 (1980); *Philadelphia Tax Review Board v. Adams Avenue Associates*, 25 Pa. Commonwealth Ct. 379, 360 A.2d 817 (1976); *Lakelands Racing Association v. Fairview Township*, 13 Pa. Commonwealth Ct. 561, 320 A.2d 391 (1974); *Alco Parking Corp. v. City of Pittsburgh*, 6 Pa. Commonwealth Ct. 433, 291 A.2d 556 (1972), *rev'd*, 453 Pa. 245, 307 A.2d 851 (1973), *rev'd*, 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974).

receipts while the Commonwealth charged the agents a license fee not dependent upon the amount of gross receipts. Moreover, the city directed its tax at all businesses while the Commonwealth directed the license fee only towards real estate brokers.

While the lines of authority set forth in *National Biscuit/Smith, Kline* and *F.J. Busse/Helsel* are different, they are not inapposite, and an application of either test to Rose View yields the same result. The annual renewal feel of $200.00 plus $2.00 per in-patient bed that the Commonwealth charges Rose View is more akin to a registration fee than a true license fee as defined in *National Biscuit.* Moreover, the Commonwealth imposed license fees clearly do not generate a large amount of income and cannot be considered revenue raising under *Smith, Kline.* Further, the incidence of the local tax differs from the Commonwealth's license fees, in that Williamsport's tax is based upon Rose View's gross receipts while the tax paid by Rose View to the Commonwealth is a license fee not dependent upon the amount of gross receipts. Also, Williamsport taxes all businesses and professions while the Commonwealth directs its license fee only at nursing homes. Therefore, the incidence of state and local taxes is not duplicative under the test set forth in *F.J. Busse* and followed by this Court in *Helsel.*

In summation, whether we rely upon *F.J. Busse* or *National Biscuit/Smith, Kline,* the license fee paid to the Commonwealth by Rose View does not preclude Williamsport from levying local taxes on Rose View's gross receipts, because there is no duplication of taxes which would violate Section 2(1) of the LTEA.

■ Second, Rose View argues that the Commonwealth's pervasive and uniform regulation of the nursing home industry preempts Williamsport from levying and collecting taxes on the nursing home's gross receipts. We disagree.

The preemption doctrine was first applied in the context of local taxation in *City of Pittsburgh v. Allegheny Valley Bank,* 488 Pa. 544, 412 A.2d 1366 (1980). In that case, the Supreme

Court noted that, where the state has entered an area for the purpose of regulation, the intent of the legislature must be ascertained in order to determine whether municipalities are also permitted to enter a field and levy local taxes. The Supreme Court struck down the local tax on banks, holding that the legislature had preempted local taxation of banks by enacting the Banking Code and the Department of Banking Code.

Only two other cases have declared the Commonwealth's regulation of an industry preempts political subdivisions from levying local taxes. In *Liberty Bell Racing Association v. Philadelphia Tax Review Board,* 86 Pa. Commonwealth Ct. 83, 483 A.2d 1063 (1984), we held that the Harness Racing Meeting Corporations Act [6] reflected the intent of the legislature to preempt the field of harness racing from local taxation. In *Commonwealth v. Wilsbach Distributors, Inc.,* 513 Pa. 215, 519 A.2d 397 (1986), the Supreme Court held that the Commonwealth's all-encompassing regulation of the liquor industry preempted imposition of a local tax on a beer distributor.

Cases decided since *Wilsbach Distributors* have consistently held that, absent a pervasive regulation of every aspect of an industry or profession, the preemption doctrine does not apply. In *Helsel,* this Court held that the Real Estate Licensing and Registration Act [7] did not provide for the pervasive regulation of every aspect of the real estate industry and, therefore, that the real estate field was not preempted from local taxation. In *Rieders v. Williamsport,* 134 Pa. Commonwealth Ct. 298, 578 A.2d 618, *appeal denied,* 526 Pa. 643, 584 A.2d 324 (1990), we held that local taxes may be assessed against attorneys because the Supreme Court's general supervisory power over the bar does not rise to the level of pervasive regulation. Most recently in *Philadelphia v. Tax Review Board,* 144 Pa. Commonwealth Ct. 374, 601 A.2d 875, *appeal*

6. Act of December 22, 1959, P.L.1978, formerly 15 P.S. §§ 2601–2625, repealed by the Act of December 17, 1981, P.L. 435. A similar provision is now found in the Act of December 17, 1981, P.L. 435, 4 P.S. §§ 325.101–325.402.

7. Act of February 19, 1980, P.L. 15, *as amended,* 63 P.S. §§ 455.101–455.902.

*denied,* 531 Pa. 649, 612 A.2d 986 (1992), we noted that courts should be hesitant to expand the preemption doctrine and declare industries off limits to local taxation because such a declaration further erodes the tax base of local taxing bodies forcing those entities to increase the tax burden on other taxpayers.

Rose View argues that the nursing home industry should be preempted from local taxation because regulation of nursing homes under the PHCFA and the LTFLR is both uniform and pervasive. Both the PHCFA and the LTFLR are silent on the issue of taxation. Where legislation contains no express prohibition or permission, it is necessary to determine the legislative intent by reading various provisions of the statute in question. *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 77 A.2d 616 (1951).

A careful reading of the PHCFA and the LTFLR indicates that the legislature did not intend its regulatory scheme to be exclusive. Section 804(b) of the PHCFA,[8] states that municipalities may inspect health care facilities, provided that local authorities attempt not to duplicate state inspection efforts; Section 810,[9] allows the Commonwealth to rely on reports by the federal government or nationally recognized accrediting agency after a facility has been licensed for three years; and Section 813,[10] allows inspections for compliance with "applicable local, state and federal regulations." Section 201.14(a) of the LTFLR,[11] states "the licensee is responsible for meeting the minimum standards for operation of facility as set forth by the Department and by other state and *local agencies* responsible for the health and welfare of patients." (Emphasis added.) It appears from these sections of the PHCFA and the LTFLR that the Commonwealth did not intend to assume exclusive authority over the nursing home industry.

8. 35 P.S. § 448.804(b).

9. 35 P.S. § 448.810.

10. 35 P.S. § 448.813.

11. 28 Pa.Code § 201.14(a).

As a nursing home, Rose View's situation parallels that of real estate brokers and lawyers. There is state regulation; however, the regulation is not pervasive, as is the case with banks, liquor licensees and harness racing. We therefore decline to hold that the nursing home industry has been preempted from local taxes.

Accordingly, the order of the Court of Common Pleas of Lycoming County is affirmed.

## ORDER

AND NOW, this 30th day of July, 1993, the order of the Court of Common Pleas of Lycoming County in the above-captioned matter is hereby affirmed.