**PROVIDENT MUTUAL LIFE
INSURANCE COMPANY OF
PHILADELPHIA, Appellant,**

v.

**TAX REVIEW BOARD OF the CITY
OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1995.

Decided May 4, 1995.

Ralph A. Mariani, for appellant.

Margaret E. Pawlowski, Asst. City Solicitor, for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, FRIEDMAN, KELLEY and NEWMAN, JJ.

FRIEDMAN, Judge.

Provident Mutual Life Insurance Company of Philadelphia (Provident Mutual) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) which affirmed a decision of the Philadelphia Tax Review Board (Board) denying Provident Mutual's petition for refund of the Philadelphia School District Realty Use and Occupancy Tax (use and occupancy tax). We affirm.

The parties stipulated to the following facts. Provident Mutual, a Pennsylvania mutual life insurance company founded in 1865 with its principal place of business located at 1600 Market Street in Philadelphia, is one of the largest mutual life insurance companies in the United States. Between 1984 and 1990, Provident Mutual leased approximately 300,000 square feet of office space at four locations in Philadelphia and paid the Philadelphia School District's use and occupancy tax with respect to the leased office space. Pursuant to the state statutes, Provident Mutual is also subject to a number of taxes and fees payable to the Commonwealth of Pennsylvania, including fees for various services and pro rata assessments. Provident Mutual filed a petition for refund of the local use and occupancy tax, which the Philadelphia Department of Revenue denied. The Board affirmed. Provident Mutual then appealed to the trial court, which also affirmed.

Provident Mutual now appeals to this court,[1] offering two theories as to why the Philadelphia School District cannot impose its use and occupancy tax on Provident Mutual. First, Provident Mutual argues that because of the Commonwealth's pervasive regulation of the life insurance industry, the doctrine of preemption prevents the Philadelphia School District from imposing this local tax. Second, Provident Mutual maintains that pursuant to the Sterling Act[2] and the Little Sterling Act,[3] the Philadelphia School District cannot impose the use and occupancy tax on Provident Mutual because this local tax duplicates state taxes and license fees to which Provident Mutual already is subject as part of the regulated insurance industry.

### I. *Preemption*

In support of its preemption argument, Provident Mutual refers us to *Pittsburgh v. Allegheny Valley Bank*, 488 Pa. 544, 412 A.2d 1366 (1980) and to *Commonwealth v. Wilsbach Distributors, Inc.*, 513 Pa. 215, 519 A.2d 397 (1986).[4]

In *Allegheny Valley Bank*, our Supreme Court applied the preemption doctrine to prevent local taxation of an industry which was extensively regulated by the Commonwealth, holding that Pittsburgh's business privilege tax intruded into the legislature's scheme for regulating the banking industry. "Such a direct tax burden on appellee state banks undercuts the Banking Department's responsibility, as well as its capacity, to regu-

late the soundness of banks, and promote their proper development." *Id.* at 553, 412 A.2d at 1371. In *Wilsbach*, the Supreme Court, in a divided opinion, extended the preemption doctrine to the liquor industry, holding that the Commonwealth's pervasive control over all phases of the industry in conjunction with the extensive taxation and fees imposed, manifested the legislature's intent to preempt local taxation of the liquor industry.

■ Extending the rationale of *Allegheny Valley Bank* and *Wilsbach*, Provident Mutual asserts that comprehensive state regulation of the insurance industry, pursuant to The Insurance Department Act of 1921,[5] and the Insurance Company Law of 1921,[6] is as pervasive as state regulation of the banking and liquor industries, indicating the legislature's intent to preempt local taxation of the insurance industry. We disagree. In fact, in a series of cases analyzing similar claims, we have refused to extend the preemption doctrine beyond the banking and liquor industries.

For instance, in *Rieders v. Williamsport*, 134 Pa. Commonwealth Ct. 298, 578 A.2d 618 (1990), we determined that local taxation of lawyers is not preempted by state regulation of that profession. We distinguished *Rieders* from *Allegheny Valley Bank*, noting that "[t]he failure of banks during the Great Depression resulting in the need for total state

---

1. Our scope of review where, as here, the trial court took no additional evidence is the same as that of the trial court, whether constitutional rights were violated, an error of law was committed or whether the Board's findings of fact were supported by substantial evidence. *Insinger Machine Co. v. Philadelphia Tax Review Board*, 165 Pa.Commonwealth Ct. 344, 645 A.2d 365 (1994).

2. 53 Pa.S. § 15971(a).

3. 53 Pa.S. § 16101(a).

4. Provident Mutual also refers us to *Liberty Bell Racing Association v. Philadelphia Tax Review Board*, 86 Pa.Commonwealth Ct. 83, 483 A.2d 1063 (1984) (state legislation clearly indicates intent to preempt harness racing field as to local taxation as well as regulation). However, our Supreme Court has not recognized an intent to preempt local taxation of the insurance industry,

*Council of Middletown Township v. Benham*, 514 Pa. 176, 523 A.2d 311 (1987), and, furthermore, we have distinguished the holding in *Liberty Bell* from other claimed preemptions on the ground that the *Harness Horse Racing Meeting Corporations Act*, at issue there, created a scheme of taxation which specifically delineated which taxes could be imposed on harness racing. *Equitable Life Assurance Society v. Murphy*, 153 Pa.Commonwealth Ct. 338, 621 A.2d 1078 (1993) (no evidence that legislature intended that insurance companies be exempt from local taxation on transfers of real estate); *City of Philadelphia v. Tax Review Board (Scott)*, 144 Pa.Commonwealth Ct. 374, 601 A.2d 875 (1992) (local taxation of securities industry not preempted).

5. Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§ 1–321.

6. Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. §§ 341–991.

control over all aspects of banking was a key element in the Supreme Court's analysis in *Allegheny Valley Bank.*" *Rieders*, 134 Pa. Commonwealth Ct. at 302, 578 A.2d at 619. In subsequent cases, we also observed that because the Court in *Allegheny Valley Bank* relied on the unique historical status of the banking industry and the state's interest in preserving the soundness of that industry, the rationale of *Allegheny Valley Bank* would be difficult to apply in other contexts. *See, e.g., City of Philadelphia v. Tax Review Board (Scott)*, 144 Pa. Commonwealth Ct. 374, 601 A.2d 875 (1992) (local taxation of securities industry not preempted); *Equitable Life Assurance Society v. Murphy*, 153 Pa. Commonwealth Ct. 338, 621 A.2d 1078 (1993) (no evidence that legislature intended insurance companies to be exempt from local taxation on transfers of real estate).

In *Rieders*, we also distinguished *Wilsbach*, noting that "regulation of the liquor industry has unique constitutional status as a result of the passage of the Twenty–First Amendment to the United States Constitution,[7] which vested in the states total control over liquor production and distribution." *Rieders*, 134 Pa. Commonwealth Ct. at 301–02, 578 A.2d at 619. In addition, in *Scott* and *Equitable Life Assurance Society*, we noted the limited precedential value of *Wilsbach* where only one justice joined the majority opinion and several justices, in concurring and dissenting opinions, expressed serious doubts about application of the preemption doctrine. *See* discussion in footnote 24 of *Equitable Life Assurance Society; see also* the Supreme Court's similar comment in footnote 11 of *Council of Middletown Township v. Benham*, 514 Pa. 176, 523 A.2d 311 (1987).

■ In making its assertion that comprehensive and pervasive state regulation preempts local taxation of the insurance industry, Provident Mutual forgets that preemption is the *exception*, not the rule.

> The state is not presumed to have preempted a field merely by legislating in it. The General Assembly must clearly show its intent to preempt a field in which it has legislated. The test for preemption in this Commonwealth is well established. Either the statute must state on its face that local legislation is forbidden, or "indicate[ ] an intention on the part of the legislature that it should not be supplemented by municipal bodies."

*Middletown*, 514 Pa. at 180–81, 523 A.2d at 313 (citations omitted), quoting *Western Pennsylvania Restaurant Association v. Pittsburgh*, 366 Pa. 374, 381, 77 A.2d 616, 620 (1951). Here, the legislature is silent as to whether local taxation is preempted by state regulation of the insurance industry. Thus, we "must ascertain the probable intention of the legislature with respect to its desire to preempt local taxation." *Scott* 144 Pa. Commonwealth Ct. at 379, 601 A.2d at 877. In making this determination, we are aware that pervasive regulation of all aspects of the industry and extensive taxation of the industry are relevant considerations. However, we note that an industry is not necessarily exempted from local taxation merely because the Commonwealth pervasively regulates that industry.[8] We see nothing in the legislation which states or implies an intent to

---

7. The Twenty–First Amendment to the U.S. Constitution provides in pertinent part:

> The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

U.S. CONST. amend. XXI, § 2.

8. As noted in *Middletown*, *Scott* and *Equitable*, several justices on the Supreme Court appear to disagree entirely with the preemption doctrine as it was applied in *Allegheny Valley Bank* and in *Wilsbach*. In *Wilsbach*, which was a plurality decision, three of the concurring justices (Zappala, McDermott and Nix) expressed concern that the rationale of *Allegheny Valley Bank* blurred the lines between the power to regulate and the power to tax.

We think that this is an extremely important point. Pervasive state regulation may imply a legislative intent to preempt local *regulation* of an industry, but it does not necessarily imply a legislative intent to preempt local *taxation* of the industry.

Furthermore, we do not review the wisdom of the local tax but only whether the legislature has preempted an area in which the locality otherwise has authority to act. An insurance company can run its business from a variety of locations; thus, if it finds a local tax overly burdensome, it can move.

exempt the insurance industry from payment of the use and occupancy tax.

Furthermore, we do not believe that the unique public policy considerations affecting the banking and liquor industries are applicable here. Provident Mutual has cited no historical events involving the insurance industry which are comparable to the failure of banks during the Great Depression or the turmoil surrounding the liquor industry which gave rise to the Eighteenth (Prohibition) and Twenty–First (Repeal of Prohibition) Amendments to the United States Constitution, and we know of none. In *Equitable*, we found no evidence that the legislature's pervasive regulation of the insurance industry preempted Philadelphia's imposition of its realty transfer tax. Similarly, here, we see no evidence that the legislature has preempted the insurance field so as to prevent the Philadelphia School District from imposing its use and occupancy tax on real estate which happens to be used and occupied by an insurance company.

## II. *Duplication*

■ Next, Provident Mutual contends that, because it is subject to state taxes and to state license fees on its insurance business, the tax enabling legislation [9] does not permit the Philadelphia School District to impose the use and occupancy tax on Provident Mutual. Specifically, Provident Mutual claims that the Philadelphia School District cannot impose the use and occupancy tax on the insurance industry because that particular local tax duplicates the Pennsylvania Insurance Premiums Tax,[10] which is imposed on every insurance company transacting business within the Commonwealth at the rate of two percent of the gross premiums from business done within the Commonwealth during the year. We cannot agree.

In determining whether a local tax duplicates a state tax and results in double taxation, our Supreme Court has said:

the operation or incidence of the two taxes is controlling as against mere differences in terminology from time to time employed in describing taxes in various cases. *The incidence of the tax embraces the subject matter thereof and, more important, the measure of the tax, i.e., the base or yardstick by which the tax is applied.* If these elements inherent in every tax are kept in mind, the incidence of the two taxes may or may not be duplicative.

*Commonwealth v. National Biscuit Co.*, 390 Pa. 642, 652, 136 A.2d 821, 825–26 (1957), *appeal dismissed*, 357 U.S. 571, 78 S.Ct. 1383, 2 L.Ed.2d 1547 (1958) (emphasis added). In *F.J. Busse Co. v. Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971), the Court applied the *National Biscuit* test to a claim that Pittsburgh's business privilege tax [11] duplicated existing state taxes on the same property or subject matter by imposing a tax on the privilege of employing tangible property which was also the subject of state taxation. The Court found that Pittsburgh's business privilege tax was a tax on the privilege of carrying on a business in the City and did not duplicate the state tax imposed on the privilege of using tangible property, or any other pertinent state taxes, "because [the business privilege tax] does not tax the same subject matter, nor is it measured by the same tax base." *Busse*, 443 Pa. at 357, 279 A.2d at 18.[12]

---

**9.** The Philadelphia School District receives its power to tax from the Little Sterling Act, 53 Pa.S. § 16101, which is based upon the Sterling Act, 53 Pa.S. § 15971, whereby the legislature conferred upon Philadelphia, as a city of the first class, "the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has the power to tax *but which it does not now tax or license...."* 53 Pa.S. § 15971(a) (emphasis added).

**10.** Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7901–7905.

**11.** The business privilege tax was enacted under authority of the Local Tax Enabling Act of De-

cember 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6901.

**12.** The question of when tax enabling legislation, such as the Sterling Act or the Little Sterling Act, precludes local taxation has arisen in a number of cases. In *Rose View Manor v. Williamsport*, 157 Pa.Commonwealth Ct. 410, 413–15, 630 A.2d 474, 475–76 (1993), we addressed the different ways in which the Supreme Court has analyzed the issue:

Two lines of authority have developed regarding what the legislature meant when it exempted from local taxation, activities, businesses, professions or occupations subject to a

Here, the Philadelphia School District imposes the use and occupancy tax on the privilege of using and occupying real estate which is located in the Philadelphia School District and used for commercial purposes. The amount of the tax is based upon the assessed value of the real estate, computed as follows:

$$\frac{\text{Square feet occupied or used}}{\text{Total square feet available for use or occupancy of the real estate}} \times \text{Assessed Value} \times \text{Rate of Taxation} \times \frac{\text{Days of actual use or occupancy}}{360}$$

Philadelphia Code § 19–1806(4). The Philadelphia School District's tax is imposed on *any business* for the *privilege of using and occupying real estate* in the district; in contrast, the Commonwealth's tax on insurance premiums is imposed on *insurance companies* for the *privilege of transacting their business* in the Commonwealth. Furthermore, the school district's use and occupancy tax is *measured by the assessed value of the real estate* used and occupied by the business, whereas the Commonwealth's tax is *measured by gross premiums*. These taxes are not imposed on the same subject matter, nor are they measured by the same yardstick. *National Biscuit; Busse.* Thus, the Philadelphia School District's use and occupancy tax does not duplicate the Commonwealth's Insurance Premiums Tax, nor do we see evidence that it duplicates any other taxes or fees imposed by the Commonwealth. Therefore, the Commonwealth's regulation and taxation of the insurance industry does not preclude the Philadelphia School District from imposing the use and occupancy tax on property used by Provident Mutual.

Accordingly, we affirm.

## ORDER

AND NOW, this 4th day of May, 1995, the order of the Court of Common Pleas of Philadelphia County, dated June 22, 1994, is affirmed.

McGINLEY, J., concurs in the result only.

---

Commonwealth tax or license fee. One line of cases has focused on whether the Commonwealth's license fee was a "true fee." ... ... [I]n *Philadelphia Tax Review Board v. Smith, Kline & French Laboratories*, 437 Pa. 197, 262 A.2d 135 (1970) [the Court held] that for a business or occupation subject to a Commonwealth license fee to be exempt from local taxation, the Commonwealth license fee must (1) generate a large amount of revenue and (2) the income derived must greatly exceed the administrative costs involved.

....

In a second line of cases, the Supreme Court held a different view in determining whether payment of a tax or license fee to the Commonwealth exempts businesses and occupations from local taxation. In *F.J. Busse Co. v. Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971), ... [t]he court set forth the following standard: to determine whether a local tax duplicates a Commonwealth tax, the incidence of each tax must be examined to determine if the subject matter embraced by each tax and the tax base to which each is applied is duplicative. If the Commonwealth and local taxes are applied to different subject matter and to a different tax base there is no duplication.

*Busse* and *Smith, Kline* are not inapposite. They merely look at different aspects of the same issue. The first aspect, which is considered in both cases, is whether the same subject, measured by the same base, is taxed on both a local and a state level. The second aspect, what the legislature meant by "license fee", is pertinent only where the Commonwealth has imposed a fee, which is arguably a license fee, on a subject which a locality also taxes. Because that is not the situation here, the second issue does not arise. *Busse.*