## INDUSTRIAL VALLEY TITLE INSURANCE COMPANY, Appellant,

v.

## SCHOOL DISTRICT OF PHILADELPHIA.

Commonwealth Court of Pennsylvania.

Argued May 10, 1995.

Decided July 10, 1995.

---

David Richman, for appellant.

Margaret E. Pawlowski, Asst. City Sol., for appellee.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

SMITH, Judge.

Industrial Valley Title Insurance Company (Industrial Valley) appeals from an order of the Court of Common Pleas of Philadelphia County affirming the decision of the Philadelphia Tax Review Board (Board) which denied Industrial Valley's petitions seeking review and refund of the $47,349.71 Realty Use and Occupancy Tax (Tax) assessment on behalf of the Philadelphia School District for the years 1987 to 1990. The Tax is a business privilege tax imposed on the use or occupancy of real estate for the purpose of carrying on a business within the boundaries of the School District. *Wanamaker v. Philadelphia Sch. Dist.*, 441 Pa. 567, 274 A.2d 524 (1971).

The issues presented to this Court are whether the School District is preempted from imposing the Tax on Industrial Valley by reason of the Commonwealth of Pennsylvania's comprehensive and pervasive regula-

tion of the title insurance industry; or whether the School District is prohibited from imposing the Tax in accordance with the provisions of Section 1(a) of the Act of August 5, 1932, Ex.Sess., P.L. 45, popularly referred to as the Sterling Act, *as amended,* 53 P.S. § 15971(a), and Section 1(a) of the Act of August 9, 1963, P.L. 640, popularly referred to as the Little Sterling Act, *as amended,* 53 P.S. § 16101(a). This Court must also decide whether Industrial Valley is exempt from local taxation under what is commonly referred to as the Title Insurance and Trust Companies Shares Tax (Shares Tax Act), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7801–7806.

Industrial Valley, a Pennsylvania title insurance company engaged in the business of underwriting and issuing policies of title insurance, conducts business from various parcels of commercial real estate leased in Philadelphia. Beginning in 1986, Industrial Valley appealed assessments of the Tax on eleven different properties it used or occupied and also petitioned for refund of taxes paid. The Board consolidated the appeals, held a public hearing and denied Industrial Valley's appeals determining that the Tax is applicable to title insurance companies. Based upon the record before the Board, the trial court denied Industrial Valley's appeal and affirmed the Board's decision.[1]

## I.

Industrial Valley initially argues that it is a member of an industry subject to comprehensive and pervasive regulation by the Commonwealth similar to the regulatory scheme provided for in the banking, alcoholic beverage and horse racing industries. It is well established that local taxation may not intrude into areas preempted by the Commonwealth, *City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh,* 488 Pa. 544, 412 A.2d 1366 (1980); but merely legislating within a field does not give rise to a presumption that the Commonwealth preempted that field. *Council of Middletown Township v. Benham,* 514 Pa. 176, 523 A.2d 311 (1987). Moreover, the Pennsylvania Supreme Court has held that local taxation of an industry impermissibly intrudes into the legislature's regulatory scheme only where relevant laws clearly disclose the intention on the part of the legislature to exclusively occupy the industry. *Allegheny Valley Bank of Pittsburgh.*

In *Liberty Bell Racing Ass'n v. Philadelphia Tax Review Board,* 86 Pa.Commonwealth Ct. 83, 483 A.2d 1063 (1984), this Court found that the Pennsylvania legislature clearly indicated its intent to preempt the harness racing field by, among other things, delineating the taxes that may be imposed on the sport. The Supreme Court applied the doctrine to the banking and alcoholic beverage industry as well, finding that local taxes were preempted where the subject industry enjoyed a unique historical or constitutional status which in conjunction with extensive regulation and pervasive control over the industry manifest the requisite legislative intent. *Commonwealth v. Wilsbach Distributors, Inc.,* 513 Pa. 215, 519 A.2d 397 (1986) (the Commonwealth's pervasive scheme of regulation over the alcoholic beverage industry manifests legislative intent to preempt local authority to tax that industry); *Allegheny Valley Bank of Pittsburgh* (Pittsburgh's business privilege tax intruded into the legislature's regulatory scheme for the banking industry).[2]

---

1. This Court's scope of review in local agency appeals where the record before the agency is full and complete and the trial court takes no additional evidence is limited to determining whether constitutional rights were violated, an error of law was committed or whether the local agency's findings of fact are supported by substantial evidence. Section 754(b) of the Administrative Agency Law, 2 Pa.C.S. § 754(b); *Insinger Mach. Co. v. Philadelphia Tax Review Board ("TRB"),* 165 Pa.Commonwealth Ct. 344, 645 A.2d 365 (1994). Statutes providing exemptions from taxation must be strictly construed, 1 Pa. C.S. § 1928(b)(5), and it is the taxpayer's burden to prove entitlement to an exemption. *Lehigh Valley Coop. Farmers v. Bureau of Employment Security Department of Labor and Industry,* 498 Pa. 521, 447 A.2d 948 (1982).

2. This Court has repeatedly noted that the plurality opinion in *Wilsbach Distributors, Inc.* is of limited precedential value, invariably declining to extend its holding beyond the particular facts of that case. For example, in *Clement & Muller, Inc. v. Tax Review Board of Philadelphia,* —— Pa.Commonwealth Ct. ——, 659 A.2d 596 (1995) this Court distinguished *Wilsbach Distributors,*

Recently, in *Provident Mutual Life Ins. Co. of Philadelphia v. Tax Review Board of Philadelphia,* —— Pa.Commonwealth Ct. ——, 658 A.2d 500 (1995), this Court held that the insurance industry is not subject to the degree of comprehensive state regulation or extensive taxation which would signify legislative intent to preempt local taxation. The Court expressly rejected the notion that the insurance industry is subject to as pervasive a state regulatory scheme as the banking and liquor industries, and conclusively determined that The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. §§ 1–321, and The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. §§ 341–991, do not reflect any clear intent on the part of the legislature to exempt insurance companies from the Tax.[3]

■ Contrary to Industrial Valley's assertions, neither further consideration of Sections 701–754 of the Insurance Company Law, 40 P.S. §§ 910–1—910–54, nor review of the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. §§ 1171.1–1171.15, provide an independent basis from which the Court could glean a legislative intent to exempt title insurance companies from local taxation. The Insurance Company Law and Unfair Insurance Practices Act provisions are unquestionably directed toward ensuring that title insurance companies operate in a responsible manner and do not illustrate a legislative intent to exclusively control the industry through legislation and taxation. As the relevant laws provide no clear legislative intent to preempt local taxation and the title insurance industry

does not enjoy unique historical or commercial status similar to that of the banking and liquor industries, the Tax is applicable to Industrial Valley and the Board did not err in denying the assessment appeals.

## II.

Industrial Valley also argues that it is protected from the Tax because the Sterling Act and, by reference, the Little Sterling Act prohibit local taxation of an entity that is also subject to a state license fee. Industrial Valley contends that the license fee structure administered by the Insurance Department is functionally indistinguishable from the license fee structure applicable to banks. The Little Sterling Act permits the City Council of Philadelphia, by ordinance, to authorize the School District's Board of Public Education to tax "any persons, transactions, occupations, privileges, subjects, and real and personal property which may now or hereafter be taxable by [the City] for general revenue purposes." Section 1(a) of the Little Sterling Act. The City's power to tax is limited under the terms of Section 1(a) of the Sterling Act that prohibits the levy, assessment and collection of "any tax on a privilege, transaction, subject or occupation, or on personal property, which is now or may hereafter become subject to a State tax or license fee."

In *Provident Mutual Life Ins. Co.,* this Court rejected the argument that the Sterling Act and Little Sterling Act prohibit imposition of the Tax on insurance companies. The Court determined that the Tax does not subject the insurance industry to duplicative state taxes pursuant to what is commonly

---

*Inc.* on the basis of enabling legislation applicable to the respective municipalities. The Court held that the Philadelphia business tax applies to beer distributors as the legislature's enactment of the First Class City Business Tax Reform Act, Act of May 30, 1984, P.L. 345, 53 P.S. §§ 16181–16193, does not indicate any legislative intent to preempt local taxes based upon net income; the local tax does not duplicate any Commonwealth revenue-raising tax; and the local tax does not contradict or conflict with the Commonwealth's regulatory scheme regarding beer distributors.
*Compare also City of Philadelphia v. Tax Review Board,* 144 Pa.Commonwealth Ct. 374, 601 A.2d 875, *appeal denied,* 531 Pa. 649, 612 A.2d 986 (1992) (local taxation of securities industry

not preempted by state regulation of the securities industry); *Rieders, Travis, Mussina, Humphrey & Harris v. City of Williamsport,* 134 Pa.Commonwealth Ct. 298, 578 A.2d 618, *appeal denied,* 526 Pa. 643, 584 A.2d 324 (1990) (local taxation of lawyers not preempted by state regulation of the legal profession).

3. *See also Equitable Life Assurance Soc'y of United States v. Murphy,* 153 Pa.Commonwealth Ct. 338, 621 A.2d 1078 (1993) (indicating that Section 342 of the Insurance Company Law, 40 P.S. § 464, contains the legislature's clear expression of its desire to include insurance companies among those entities subject to real estate taxes).

referred to as the Pennsylvania Insurance Premiums Tax (Premiums Tax), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7901–7906, as the Tax is not imposed on the same subject matter nor measured by the same yardstick as the Premiums Tax. Specifically, the Tax is imposed on *"any business* for the *privilege of using and occupying real estate* in the district" and is *"measured by the assessed value of the real estate* used and occupied by the business," whereas the Premiums Tax is imposed on *"insurance companies* for the *privilege of transacting their business* in the Commonwealth" and is *"measured by gross premiums." Provident Mutual Life Ins. Co.,* 658 A.2d at 504 (emphasis in original).

■ While this Court recognizes that title insurance companies are exempt from the Premiums Tax by provisions contained in Section 901(1), 72 P.S. § 7901(1), the same analysis employed in *Provident Mutual Life Ins. Co.* demonstrates that the School District is not precluded from imposing the Tax upon Industrial Valley merely because it tenders approximately $25,000 in fees annually to the Insurance Commissioner pursuant to provisions of the Insurance Department Act. Sections 211, 211.1 and 216 of the Insurance Department Act, 40 P.S. §§ 49, 49.1 and 54,[4] provide for fees to cover the costs of licensing and examination, defray the expenses incurred by the committee on valuation of securities, and recompense the Insurance Commissioner for expenses incurred in examining the books and papers of an insurance company.[5]

Industrial Valley cites this Court's decision in *City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh,* 35 Pa.Commonwealth Ct. 502, 388 A.2d 1098 (1978), *aff'd on other grounds, Allegheny Valley Bank of Pittsburgh,* to support its argument that the limitations in Section 1(a) of the Sterling Act prohibit all local taxation of entities subject to state license fees regardless of whether the subject of the tax and the bases of the license fees are duplicative. This Court's holding that imposition of bank licensing fees by the Commonwealth precluded all local taxation of banks pursuant to Section 3 of The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. § 6903 (containing language analogous to that in the Sterling Act), was not adopted by the Supreme Court in its *Allegheny Valley Bank of Pittsburgh* decision.[6] Nonetheless, because imposition of the Tax upon title insurance companies does not transgress the provisions of either the Sterling or Little Sterling Acts, the Board did not err in denying Industrial Valley's appeals on this ground.

### III.

Industrial Valley finally argues that it is exempt from the Tax pursuant to the Shares Tax Act which it contends prohibits all local taxation of title insurance companies except taxes based upon ownership interest in real estate. The Shares Tax Act provides: "the shares and so much of the capital stock, surplus, profits, and deposits of such company as shall not be invested in real estate, shall be exempt from all other taxation under

---

**4.** Section 216 of the Insurance Department Act, formerly 40 P.S. § 54, was repealed by the Act of February 17, 1994, P.L. 79.

**5.** Due to the determination that the Tax is not impermissibly duplicative of the license fees imposed upon Industrial Valley, this Court need not decide whether the license fees are "true license fees" as defined by the Supreme Court in *National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 98 A.2d 182 (1953). *See Rose View Manor, Inc. v. City of Williamsport,* 157 Pa.Commonwealth Ct. 410, 630 A.2d 474 (1993), *appeal denied,* 537 Pa. 627, 641 A.2d 591 (1994); *Helsel, Inc. v. City of Harrisburg,* 129 Pa.Commonwealth Ct. 1, 564 A.2d 546 (1989) (local taxation precluded by tax enabling legislation only where the fees paid to

the Commonwealth apply to the same subject matter as the local tax *and* are true license fees as opposed to a registration fees).

**6.** After this Court rendered its decision in *Allegheny Valley Bank of Pittsburgh,* it recognized the limited precedential value of the Supreme Court's decision in *Philadelphia Tax Review Board v. Smith, Kline and French Lab.,* 437 Pa. 197, 262 A.2d 135 (1970), in which the Court did not compare the basis of the local tax to determine if it was duplicative of the subject of the license fees. *Rose View Manor, Inc.* In its brief, Industrial Valley admits that the decision in *Smith, Kline and French Lab.* does not accurately reflect the law in this Commonwealth.

the laws of this Commonwealth." 72 P.S. § 7801. Initially, it should be noted that this issue is one of first impression in this Commonwealth and must be resolved by ascertaining and effectuating legislative intent. Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a); *Tobin v. Radnor Township Board of Comm'rs,* 142 Pa.Commonwealth Ct. 567, 597 A.2d 1258 (1991).

In *Allegheny Valley Bank of Pittsburgh,* this Court interpreted Section 701 of what is commonly referred to as the Bank Shares Tax, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7701, which contains an exemption similar to the one contained in the Shares Tax Act. Section 701 saves from local taxation "the shares, and so much of the capital and profits ... as shall not be invested in real estate." This Court did not follow the analysis set forth by the Supreme Court in *F.J. Busse Co. v. Pittsburgh,* 443 Pa. 349, 279 A.2d 14 (1971), and compare the nature and character of the Bank Shares Tax and the local privilege tax to determine the validity of the local tax. Rather, the Court relied upon the Supreme Court's reasoning in *Oil City v. Oil City Trust Co.,* 151 Pa. 454, 25 A. 124 (1892), and determined that the business privilege tax was proscribed by the Bank Shares Tax merely because it was a revenue-raising measure for the city. Inasmuch as the Supreme Court did not address the Bank Shares Tax issue in *Allegheny Valley Bank of Pittsburgh* and this Court's analysis is contrary to that applied by the Supreme Court in *F.J. Busse Co.,* the discussion of the Bank Shares Tax issue in *Allegheny Valley Bank of Pittsburgh* is of no precedential or persuasive value.

It is axiomatic that Pennsylvania taxes are commonly classified according to the subject upon which the tax is levied. *F.J. Busse Co.* As the statutory language in Section 7801 of the Tax Shares Act explicitly and clearly delineates the subjects saved from local taxation, the Court is convinced that the legislature did not intend to exempt the entire title insurance industry from all local taxes as Industrial Valley contends. *Cf.* Section 8502(e) of what is popularly referred to as the Mutual Thrift Institutions Tax Act, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 8502(e) (where the legislature used clear and ambiguous language to convey its intent to grant an industry exemption from all local taxation except for taxes based on transfers in real estate).

 The Tax is not proscribed by the Shares Tax Act because it is not measured by Industrial Valley's shares, capital stock, surplus, profits or deposits and the Shares Tax Act does not prohibit the imposition of privilege taxes based upon use of real estate for commercial purposes. Because Industrial Valley failed to meet its burden to prove exemption from the Tax, the trial court appropriately affirmed the decision of the Board and dismissed Industrial Valley's tax assessment appeal.

### ORDER

AND NOW, this 10th day of July, 1995, the order of the Court of Common Pleas of Philadelphia County is affirmed.